**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
            jsmith@bursor.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUDRA GRAHAM and STACY MOISE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NOOM, INC. and FULLSTORY, INC.,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

1   Plaintiffs Audra Graham and Stacy Moise ("Plaintiffs"), individually and on behalf of all

2   others similarly situated, by and through their attorneys, make the following allegations pursuant to

3   the investigation of their counsel and based upon information and belief, except as to allegations

4   specifically pertaining to themselves and their counsel, which are based on personal knowledge.

5   ## NATURE OF THE ACTION

6   1.      This is a class action suit brought against Defendants Noom, Inc. ("Noom") and

7   FullStory, Inc. ("FullStory") (collectively, "Defendants") for wiretapping the electronic

8   communications of visitors to Defendant Noom's website, Noom.com (the "Website").[1]  The

9   wiretaps, which are embedded in the computer code on the Website, are used by Defendants to

10  secretly observe and record website visitors' keystrokes, mouse clicks,[2] and other electronic

11  communications, including the entry of Personally Identifiable Information ("PII") and Protected

12  Health Information ("PHI"), in real time.  By doing so, Defendants have violated the California

13  Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 631 and 635, and invaded Plaintiffs' and

14  class members' privacy rights in violation of the California Constitution.

15  2.      On November 17, 2019, Ms. Graham visited the Website.  Likewise, on June 23,

16  2020, Ms. Moise visited the Website.  During the visits, Defendants recorded Plaintiffs' electronic

17  communications in real time, used the intercepted data to attempt to learn their e-mail, height,

18  weight, age range, gender, medical conditions, and other PII and PHI.

19  3.      Plaintiffs bring this action on behalf of themselves and a class of all persons whose

20  electronic communications were intercepted through the use of Defendants' wiretap on the Website.

21  ## THE PARTIES

22  4.      Plaintiff Audra Graham is a California resident who lives in Oakland, California.  On

23  November 17, 2019, prior to the filing of this lawsuit, Ms. Graham browsed the Website on her

24  computer while investigating Defendant Noom's diet offerings.  Ms. Graham was in Oakland when

25  she visited the Website.  During the visit, Ms. Graham's keystrokes, mouse clicks, and other

26  ---

27  [1] NOOM, https://www.noom.com/#/ (last accessed Sept. 9, 2020).

    [2] As used herein, the term "mouse clicks" also refers to "touch gestures" such as the "tap," "swipe,"
28  and similar gestures used on touchscreen devices.

---

1  electronic communications—including the entry of her e-mail, height, weight, age range, gender,

2  medical conditions, and other PII and PHI—were intercepted in real time and were disclosed to

3  Defendants Noom and FullStory through the wiretap.  Ms. Graham was unaware at the time that her

4  keystrokes, mouse clicks, and other electronic communications, including the information described

5  above, were being intercepted in real-time and would be disclosed to FullStory, nor did Ms. Graham

6  consent to the same.

7      5.     Plaintiff Stacy Moise is a California resident who lives in Pasadena, California.  On

8  June 23, 2020, prior to the filing of this lawsuit, Ms. Moise browsed the Website on her cell phone

9  while investigating Defendant Noom's diet offerings.  Ms. Moise was in Pasadena when she visited

10 the Website.  During the visit, Ms. Moise's keystrokes, mouse clicks, and other electronic

11 communications—including the entry of her e-mail, height, weight, age range, gender, medical

12 conditions, and other PII and PHI—were intercepted in real time and were disclosed to Defendants

13 Noom and FullStory through the wiretap.  Ms. Moise was unaware at the time that her keystrokes,

14 mouse clicks, and other electronic communications, including the information described above,

15 were being intercepted in real-time and would be disclosed to FullStory, nor did Ms. Moise consent

16 to the same.  In fact, Ms. Moise never signed up to use Defendant Noom's services.

17     6.     Defendant Noom, Inc. is a Delaware limited liability company with its principal place

18 of business at 229 West 28th Street, 9th Floor, New York, New York 10001.

19     7.     Upon information and belief, the Website was visited over five million times in

20 August 2020 alone.[3]

21     8.     Noom does business throughout California and the entire United States.

22     9.     Noom owns and operates the Website.

23     10.    Defendant FullStory is a Delaware corporation with its principal place of business at

24 1745 Peachtree Street Northwest, Suite G, Atlanta, Georgia 30309.

25     11.    FullStory is a marketing software-as-a-service ("SaaS") company.

26     12.    FullStory provides a feature called "Session Replay," which is at issue here and

27

28 _____
   [3] https://www.similarweb.com/website/noom.com/.

described more fully below.  At all relevant times here, Noom has used FullStory's "Session Replay" product on its website.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and at least one member of the proposed class is citizen of state different from at least one Defendant.

14.     This Court has personal jurisdiction over Defendants because each of the Defendants have purposefully availed themselves of the laws and benefits of doing business in this State, and Plaintiffs' claims arise out of each of the Defendants' forum-related activities.  Furthermore, a substantial portion of the events giving rise to Plaintiffs' claims occurred in this District.

15.     Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District.

## STATEMENT OF FACTS

I.     **Overview Of The Wiretaps**

16.     Defendant FullStory develops a software of the same name that provides marketing analytics.

17.     One of FullStory's features is called "Session Replay," which purports to help businesses improve their website design and customer experience.

18.     Session Replay provides a real-time recording of a user's interactions on a website. FullStory says that "Session replay tools capture things like mouse movements, clicks, typing, scrolling, swiping, tapping, etc."

19.     FullStory touts that Session Replay relies on real video of a user's interactions with a website, or, in other words, a "recorded session."[4]

20.     To demonstrate how Session Replay works, FullStory displays the "recorded session

_____

[4] https://www.fullstory.com/resources/the-definitive-guide-to-session-replay/

of a fictional user interacting with th[e] [Session Replay] Guide":



21.    FullStory describes the above video as follows:

Here you can watch a FullStory session replay of a user—Daniel Falko—flipping through *The Definitive Guide to Session Replay*. **Notice how you can see interactions, mouse movements, clicks, interactions with overlays, and more**—and everything is listed in order in a stream at the right side of the replay. This is what a session replay looks like in the FullStory app.[5]

22.    FullStory's promotional video shows the behind-the-scenes features of the software. First, FullStory lets you view a list of users who visited the website, as well as the time they spent on the website:

//

//

//

---

[5] https://www.FullStory.com/resources/the-definitive-guide-to-session-replay/#finding-the-right-session-replay-tool (emphasis added).



23.     Upon clicking one of these "sessions," FullStory lets a company view the video of a user's interaction with a website, including mouse movements, clicks, interactions with overlays, keystrokes, geographic location, IP address, and more "to see the real customer experience behind the data":

24.     FullStory instructs prospective partners that "[t]he first step toward recording all in-browser interactions and making them available for pixel-perfect playback is deploying FullStory's recording JavaScript snippet.  Simply paste the snippet into the <head> element via your Content Management System (CMS), via your online store platform, or via your application's code."

25.     This snippet of code allows Defendants to record the keystrokes, mouse clicks, data entry, and other electronic communications of visitors to websites where the code is installed.  It also allows Defendants to track the amount of time spent on the website, geographic location of the visitor, and other information described above.

26.     FullStory records website user's interactions locally in the user's browser and transmits that information to FullStory's recording servers.  FullStory then makes the information available to its clients.

27.     FullStory can not only record users' electronic communications, it can also monitor them *live*.  "For sessions that are actively recording and we are still receiving events from a user (meaning the last page in their session is still open), you'll see a 'Go Live' button at the end of the playback bar.  Once you click on the button, you'll essentially be riding along in near real time with the user with no need to refresh the playback."

28.     FullStory's recording is not limited to desktop website, but also mobile websites and mobile applications.[6]

29.     Technology like FullStory's Session Replay feature is not only highly intrusive, but dangerous.  A 2017 study by Princeton University found that session recording technologies were collecting sensitive user information such as passwords and credit card numbers.  The research notes that this wasn't simply the result of a bug, but rather insecure practices.  Thus, session recording technologies such as FullStory's can leave users vulnerable to data leaks and the harm resulting therefrom.

30.     FullStory's business model involves entering into voluntary partnerships with various companies and providing their software to their partners.

---

[6] https://www.fullstory.com/mobile-apps/.

31.     One of FullStory's partners is Defendant Noom.

32.     Noom utilizes FullStory's software on the Website.

33.     Noom knows that FullStory's software captures the keystrokes, mouse clicks and other communications of visitors to its website, and pays FullStory to supply that information.

34.     Pursuant to an agreement with FullStory, Noom enabled FullStory's software by voluntarily embedding FullStory's software code on the Website.

35.     As currently deployed, FullStory's software, as employed by Noom, functions as a wiretap.

**II.     Defendants Wiretapped Plaintiffs' Electronic Communications**

36.     On November 17, 2019, Ms. Graham visited the Website.

37.     Likewise, on June 23, 2020, Ms. Moise visited the Website.

38.     During those visits, and upon information and belief, the Session Replay feature in FullStory's software created a video capturing each of Plaintiffs' keystrokes and mouse clicks on the website.  The FullStory wiretap also captured the date and time of the visits, the duration of the visits, Plaintiffs' IP addresses, their locations at the time of the visits, their browser types, and the operating system on their devices.

39.     FullStoryFullStory's recording of keystrokes, mouse clicks, data entry, and other electronic communications begins the moment a user accesses or interacts with the Website.

40.     When users access Defendant Noom's website, they fill out a form and enter PII and PHI.  FullStory's software captures these electronic communications throughout each step of the process.

41.     FullStory's software captures, among other things:

(a)  The user's height and weight;

(b)  The user's gender;

(c)  The user's age range;

(d)  The user's diet and exercise habits;

(e)  Whether the user has "significant back issues";

(f)  Whether the user has any of a handful of medical conditions

(g) Whether the user has ever been "diagnosed with or received treatment for diabetes";

(h) The user's email;

(i) The user's IP address;

(j) The user's their location at the time of the visit; and

(k) The user's browser type and the operating system on their devices

42.   Crucially, Defendant Noom does not ask users, including Plaintiffs, whether they consent to being wiretapped by FullStory.  Users are never actively told that their electronic communications are being wiretapped by FullStory.

43.   Further, users are not presented with a hyperlink to Defendant's Privacy Policy until the end of the form on the Website, *i.e. after* the wiretap has already been deployed.

44.   Moreover, users are never given the option to accept the Privacy Policy by clicking a button, are told that by clicking "See My Result," they accept the Privacy Policy, or are otherwise told *how* to accept the Privacy Policy.  And assuming *arguendo* that a user passively accepts the Privacy Policy by using the Website, this is problematic and invalid because users are not shown a link to the Privacy Policy until *after* their privacy has already been breached by the wiretap.

45.   Therefore, users like Plaintiffs never agree or are never given the option to agree to the Privacy Policy when using the Website.

46.   In addition, the hyperlink to the Privacy Policy is in the smallest text on the screen, not underlined, is not the typical color for a hyperlink (light blue), is not in all caps, and is surrounded by much more obvious and distracting features, such as the large orange "See My Result" button.  These issues are displayed in the below screenshot of the Website:

//
//
//
//
//
//

47.     Users, including Plaintiffs, are thus not on notice of the Privacy Policy when they click "See My Result."

48.     Even if users do agree to the Privacy Policy by using the Website or otherwise—and they do not for the reasons stated above—Noom does not mention FullStory or its Session Replay feature in Noom's Privacy Policy.  As such, users do not agree to be wiretapped even if they agree to the Privacy Policy.

49.     Neither Plaintiffs nor any Class member consented to being wiretapped on the Website, or to have their communications recorded and shared with FullStory.  Any purported consent that was obtained was ineffective because (i) the wiretapping began from the moment Plaintiffs and Class members accessed the Website; (ii) the Privacy Policy did not disclose the wiretapping or FullStory; (iii) Plaintiffs and Class members are not given the option to accept the Privacy Policy, or told how they can accept it; and (iv) the hyperlink to the Privacy Policy is inconspicuous and therefore insufficient to provide notice.

//

//

**CLASS ACTION ALLEGATIONS**

50.     Plaintiffs seek to represent a class of all California residents who visited Noom.com, and whose electronic communications were intercepted or recorded by FullStory.  Plaintiffs reserve the right to modify the class definition as appropriate based on further investigation and discovery obtained in the case.

51.     Members of the Class are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class number in the thousands.  The precise number of Class members and their identities are unknown to Plaintiffs at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants.

52.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to, whether Defendants have violated the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631 and invaded Plaintiffs' privacy rights in violation of the California Constitution; and whether class members are entitled to actual and/or statutory damages for the aforementioned violations.

53.     The claims of the named Plaintiffs are typical of the claims of the Class because the named Plaintiffs, like all other class members, visited the Website and had their electronic communications intercepted and disclosed to FullStory through the use of FullStory's wiretaps.

54.     Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class members they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel.

55.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability.  Individualized litigation increases the delay and

1  expense to all parties and multiplies the burden on the judicial system presented by the complex

2  legal and factual issues of this case.  Individualized litigation also presents a potential for

3  inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer

4  management difficulties and provides the benefits of single adjudication, economy of scale, and

5  comprehensive supervision by a single court on the issue of Defendants' liability.  Class treatment

6  of the liability issues will ensure that all claims and claimants are before this Court for consistent

7  adjudication of the liability issues.

8       56.    Plaintiffs bring all claims in this action individually and on behalf of members of the

9  Class against Defendants.

**COUNT I**
**Violation Of The California Invasion Of Privacy Act,**
**Cal. Penal Code § 631**

12       57.    Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set

13  forth herein.

14       58.    Plaintiffs bring this claim individually and on behalf of the members of the proposed

15  Class against Defendants.

16       59.    To establish liability under section 631(a), Plaintiffs need only establish that

17  Defendants, "by means of any machine, instrument, contrivance, or in any other manner," did any

18  of the following:

19      Intentionally taps, or makes any unauthorized connection, whether
20  physically, electrically, acoustically, inductively or otherwise, with
any telegraph or telephone wire, line, cable, or instrument, including
21  the wire, line, cable, or instrument of any internal telephonic
communication system,

22      *Or*

23      Willfully and without the consent of all parties to the communication,
24  or in any unauthorized manner, reads or attempts to read or learn the
contents or meaning of any message, report, or communication while
25  the same is in transit or passing over any wire, line or cable or is
being sent from or received at any place within this state,

26      *Or*

27      Uses, or attempts to use, in any manner, or for any purpose, or to
28  communicate in any way, any information so obtained,

*Or*

Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

60.    Section 631(a) is not limited to phone lines, but also applies to "new technologies" such as computers, the Internet, and email.  *See Matera v. Google Inc.*, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *Bradley v. Google, Inc.*, 2006 WL 3798134, at *5-6 (N.D. Cal. Dec. 22, 2006) (CIPA governs "electronic communications"); *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020) (reversing dismissal of CIPA and common law privacy claims based on Facebook's collection of consumers' Internet browsing history).

61.    FullStory's software, including its Session Replay feature, is a "machine, instrument, contrivance, or … other manner" used to engage in the prohibited conduct at issue here.

62.    At all relevant times, by using FullStory's technology, Defendants intentionally tapped, electrically or otherwise, the lines of internet communication between Plaintiffs and class members on the one hand, and Noom's Website on the other hand.

63.    At all relevant times, by using FullStory's technology, Defendants willfully and without the consent of all parties to the communication, or in any unauthorized manner, read or attempted to read or learn the contents or meaning of electronic communications of Plaintiffs and putative class members, while the electronic communications were in transit or passing over any wire, line or cable or were being sent from or received at any place within California.

64.    Defendants aided, agreed with, and conspired with each other to implement FullStory's technology and to accomplish the wrongful conduct at issue here.  In addition, Noom employed FullStory to accomplish the wrongful conduct at issue here.

65.    Plaintiffs and Class Members did not consent to any of Defendants' actions in implementing FullStory's wiretaps on the Website.  Nor have Plaintiffs or Class Members

1  consented to Defendants' intentional access, interception, reading, learning, recording, and

2  collection of Plaintiffs and Class Members' electronic communications.

3     66.   The violation of section 631(a) constitutes an invasion of privacy sufficient to confer

4  Article III standing.

5     67.   Unless enjoined, Defendants will continue to commit the illegal acts alleged here.

6  Plaintiffs continue to be at risk because they frequently use the internet to search for information

7  about products or services.  They continue to desire to use the internet for that purpose, including

8  for the purpose of shopping for various diets, weight loss plans, or other health-related products.

9  Defendant FullStory provides its software, including the Session Replay feature, to many other

10 website operators who offer a wide array of services.  For many websites that Plaintiffs may or are

11 likely to visit in the future, they have no practical way to know if their website communications will

12 be monitored or recorded by FullStory.

13    68.   Plaintiffs and Class Members seek all relief available under Cal. Penal Code § 637.2,

14 including injunctive relief and statutory damages of $5,000 per violation.

15
16
**COUNT II**
**Violation Of The California Invasion Of Privacy Act,**
**Cal. Penal Code § 635**

17    69.   Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set

18 forth herein.

19    70.   Plaintiffs bring this claim individually and on behalf of the members of the proposed

20 Class against Defendants.

21    71.   California Penal Code § 635 provides, in pertinent part:

22
23
24
25
26
27
28
> Every person who manufactures, assembles, sells, offers for sale, advertises for sale, possesses, transports, imports, or furnishes to another any device which is primarily or exclusively designed or intended for eavesdropping upon the communication of another, or any device which is primarily or exclusively designed or intended for the unauthorized interception or reception of communications between cellular radio telephones or between a cellular radio telephone and a landline telephone in violation of Section 632.5, or communications between cordless telephones or between a cordless telephone and a landline telephone in violation of Section 632.6 , shall be punished by a fine not exceeding two thousand five hundred dollars.

72.     At all relevant times, by implementing FullStory's wiretaps, each Defendant intentionally manufactured, assembled, sold, offered for sale, advertised for sale, possessed, transported, imported, and/or furnished a wiretap device that is primarily or exclusively designed or intended for eavesdropping upon the communication of another.

73.     FullStory's code is a "device" that is "primarily or exclusively designed" for eavesdropping.  That is, the FullStory's code is designed to gather PII, including keystrokes, mouse clicks, and other electronic communications.

74.     Plaintiffs and Class Members did not consent to any of Defendants' actions in implementing Fullstory's wiretaps.

75.     Plaintiffs and Class Members seek all relief available under Cal. Penal Code § 637.2, including injunctive relief and statutory damages of $5,000 per violation.

<div align="center">

**COUNT III**
**Invasion Of Privacy Under California's Constitution**

</div>

76.     Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

77.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Defendants.

78.     Plaintiffs and Class Members have an interest in: (1) precluding the dissemination and/or misuse of their sensitive, confidential PII and PHI; and (2) making personal decisions and/or conducting personal activities without observation, intrusion or interference, including, but not limited to, the right to visit and interact with various Internet sites without being subjected to wiretaps without Plaintiffs' and Class Members' knowledge or consent.

79.     At all relevant times, by implementing FullStory's wiretaps on Noom's Website, each Defendant intentionally invaded Plaintiffs' and Class Members' privacy rights under the California Constitution, and procured the other Defendant to do so.

80.     Plaintiffs and Class Members had a reasonable expectation that their PII, PHI, and other data would remain confidential and that Defendants would not install wiretaps on the Website.

81.     Plaintiffs and Class Members did not consent to any of Defendants' actions in implementing FullStory's wiretaps on the Website.

82.     This invasion of privacy is serious in nature, scope and impact.

83.     This invasion of privacy alleged here constitutes an egregious breach of the social norms underlying the privacy right.

84.     Plaintiffs and Class Members seek all relief available for invasion of privacy claims under California's Constitution.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendants, as follows:

  (a) For an order certifying the Class under Rule 23 and naming Plaintiffs as the representatives of the Class and Plaintiffs' attorneys as Class Counsel to represent the Class;

  (b) For an order declaring that the Defendants' conduct violates the statutes referenced herein;

  (c) For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

  (d) For compensatory, punitive, and statutory damages in amounts to be determined by the Court and/or jury;

  (e) For prejudgment interest on all amounts awarded;

  (f) For injunctive relief as pleaded or as the Court may deem proper; and

  (g) For an order awarding Plaintiffs and the Class their reasonable attorneys' fees and expenses and costs of suit.

## **DEMAND FOR TRIAL BY JURY**

Plaintiffs demand a trial by jury of all issues so triable.

1  Dated: October 2, 2020             Respectfully submitted,

2                    **BURSOR & FISHER, P.A.**

3                    By:    /s/ *Joel D. Smith*
4                           Joel D. Smith

5                    L. Timothy Fisher (State Bar No. 191626)
                   Joel D. Smith (State Bar No. 244902)
6                    1990 North California Boulevard, Suite 940
                   Walnut Creek, CA  94596
7                    Telephone: (925) 300-4455
                   Facsimile:  (925) 407-2700
8                    E-Mail: ltfisher@bursor.com
                          jsmith@bursor.com

9                    *Attorneys for Plaintiffs*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28