EMILY JOHNSON HENN (SBN 269482)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: + 1 (650) 632-4700
Facsimile: + 1 (650) 632-4800
Email: ehenn@cov.com

SIMON J. FRANKEL (SBN 171552)
PATRICK R. CAREY (SBN 308623)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
Email: sfrankel@cov.com
Email: pcarey@cov.com

*Attorneys for Defendant*
*FullStory, Inc.*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| AUDRA GRAHAM and STACY MOISE, individually and on behalf of all others similarly situated, | Civil Case No.: 3:20-cv-06903-LB |
| Plaintiffs, | |
| v. | **DEFENDANT FULLSTORY, INC.'S MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1), 12(b)(2), AND 12(b)(6)** |
| NOOM, INC., and FULLSTORY, INC., | |
| Defendants. | Hearing Date: February 18, 2021 Hearing Time: 9:30 a.m. |
|  | Honorable Laurel Beeler |

## <u>TABLE OF CONTENTS</u>

NOTICE OF MOTION AND MOTION TO DISMISS ................................................................. 1

STATEMENT OF ISSUES TO BE DECIDED ........................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 1

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.     ALLEGATIONS OF THE COMPLAINT.......................................................................... 3

        A.      FullStory's Software and Services........................................................................ 3

        B.      Allegations Related to Plaintiffs .......................................................................... 4

III.    LEGAL STANDARD......................................................................................................... 4

IV.     ARGUMENT ...................................................................................................................... 5

        A.      Plaintiffs' Complaint Should Be Dismissed for Lack of Subject Matter
                Jurisdiction........................................................................................................... 5

        B.      FullStory Should Be Dismissed for Lack of Personal Jurisdiction. ..................... 6

                1.      Plaintiffs Cannot Establish General Jurisdiction Over FullStory. .............. 6

                2.      Plaintiffs Cannot Establish Specific Jurisdiction Over FullStory.............. 7

                        a)      The Complaint Contains No Allegations of Purposeful
                                Direction by FullStory. ................................................................. 8

                        b)      There Are No Allegations that Plaintiffs' Claims Arise Out of
                                or Relate to Forum-Related Activities By FullStory. ..................... 9

                        c)      The Exercise of Jurisdiction Over FullStory in California Is
                                Not Reasonable. ............................................................................ 9

        C.      The Court Should Dismiss Each Claim in the Complaint, for Each Fails as a
                Matter of Law. ................................................................................................... 10

                1.      Plaintiffs Fail To Plausibly Allege Facts to Support a CIPA Claim Under
                        Section 631 (Count 1). ................................................................................ 10

                        a)      FullStory Did Not Violate Section 631 Because Noom, Using
                                FullStory's Technology, Was a Party to Plaintiffs' Purported
                                Communications. .......................................................................... 10

                        b)      FullStory Did Not Violate Section 631 Because the Software
                                Did Not Intercept Communications "In Transit."......................... 13

c)    FullStory Did Not Violate Section 631 Because the Software Did Not Collect the "Contents" of Plaintiffs' Purported Communications. ................................................. 14

d)    The Conduct Alleged Did Not Violate Section 631 Because It Was Disclosed in Noom's Privacy Policy, Relied on by the Complaint. ................................................................. 15

2.    The Court Should Dismiss Count 2 Because Plaintiffs Lack Standing to Assert Such a Claim And Because The Complaint Fails To State a Claim Under Section 635 ................................................. 17

a)    Plaintiffs Lack a Private Right of Action and Standing To Assert a Claim Under Section 635 ............................... 17

b)    FullStory's Code Is Not a Device Primarily or Exclusively Designed for Eavesdropping ......................................... 19

3.    The Court Should Dismiss Count 3 Because Plaintiffs Cannot State a Claim for Invasion of Privacy Under the California Constitution. ........... 20

V.    CONCLUSION ............................................................................... 22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cnty.*,
  480 U.S. 102 (1987)..................................................................................................5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................................5

*Bender v. Williamsport Area Sch. Dist.*,
  475 U.S. 534 (1986)..................................................................................................4

*BNSF Ry. Co. v. Tyrrell*,
  137 S. Ct. 1549 (2017)..............................................................................................7

*Boschetto v. Hansing*,
  539 F.3d 1011 (9th Cir. 2008)..................................................................................9

*Brainerd v. Governors of the Univ. of Alta.*,
  873 F.2d 1257 (9th Cir. 1989)..................................................................................5

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*,
  137 S. Ct. 1773 (2017)..........................................................................................6, 9

*Brodsky v. Apple Inc.*,
  445 F. Supp. 3d 110 (N.D. Cal. 2020) ...................................................................14

*Bunnell v. Motion Picture Ass'n of Am.*,
  567 F. Supp. 2d 1148 (C.D. Cal. 2007) ..................................................................14

*Catsouras v. Dep't of Cal. Highway Patrol*,
  181 Cal. App. 4th 856 (2010) .................................................................................21

*Cline v. Reetz-Laiolo*,
  329 F. Supp. 3d 1000 (N.D. Cal. 2018) ..................................................................13

*Cohen v. Casper Sleep, Inc.*,
  2018 WL 3392877 (S.D.N.Y. July 12, 2018) .........................................................18

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014)..............................................................................................6, 7

*Davis v. Fed. Election Comm'n*,
  554 U.S. 724 (2008)................................................................................................18

*In re Facebook, Inc. Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020) ........................................................................ *passim*

*In re Facebook Internet Tracking Litig.*,
    140 F. Supp. 3d 922 (N.D. Cal. 2015) .................................................................19

*In re Facebook Internet Tracking Litig.*,
    263 F. Supp. 3d 836 (N.D. Cal. 2017) .............................................................20, 21

*Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*,
    905 F.3d 597 (9th Cir. 2018) .................................................................................8

*Garcia v. Enter. Holdings, Inc.*,
    78 F. Supp. 3d 1125 (N.D. Cal. 2015) .................................................................16

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) ...............................................................................5

*Hill v. Nat'l Collegiate Athletic Ass'n*,
    7 Cal. 4th 1 (1994) .............................................................................................21

*In re iPhone Application Litigation*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) ...............................................................22

*Kanter v. Warner-Lambert Co.*,
    265 F.3d 853 (9th Cir. 2001) .................................................................................5

*Konop v. Hawaiian Airlines, Inc.*,
    302 F.3d 868 (9th Cir. 2002) ...............................................................................13

*In re Lenovo Adware Litig.*,
    2016 WL 677245 (N.D. Cal. Oct. 27, 2016).........................................................18

*Low v. LinkedIn Corp.*,
    900 F. Supp. 2d 1010 (N.D. Cal. 2012) ...............................................................22

*LVRC Holdings LLC v. Brekka*,
    581 F.3d 1127 (9th Cir. 2009) .........................................................................11, 19

*Navarro v. Block*,
    250 F.3d 729 (9th Cir. 2001) .................................................................................5

*Panavision Int'l, L.P. v. Toeppen*,
    141 F.3d 1316 (9th Cir. 1998) ...............................................................................5

*Powell v. Union Pac. R. Co.*,
    864 F. Supp. 2d 949 (E.D. Cal. 2012).................................................................10

*Rogers v. Ulrich*,
   52 Cal. App. 3d 894 (1975) ...............................................................10, 11, 12, 15

*Rosenow v. Facebook, Inc.*,
   2020 WL 1984062 (S.D. Cal. Apr. 27, 2020) ..................................................13

*Saleh v. Hudson's Bay Co. et al.*,
   No. cv-20-9095-PA (KSx) (C.D. Cal. Oct. 8, 2020) .........................................6

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) .............................................................. *passim*

*Scott v. Breeland*,
   792 F.2d 925 (9th Cir. 1986) .........................................................................4

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ...............................................................................18

*Sun Grp. U.S.A. Harmony City, Inc. v. CRRC Corp. Ltd.*,
   2018 WL 10689420 (N.D. Cal. July 9, 2018) .................................................8

*Taus v. Loftus*,
   40 Cal. 4th 683 (2007) ...............................................................................21

*Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*,
   315 F. Supp. 3d 1147 (C.D. Cal. 2018) ..........................................................5

*United States v. Reed*,
   575 F.3d 900 (9th Cir. 2009) .......................................................................15

*Urbaniak v. Newton*,
   226 Cal. App. 3d 1128 (1991) .....................................................................21

*In re Vizio, Inc. Consumer Privacy Litig.*
   238 F. Supp. 3d 1204 (C.D. Cal. 2017) ........................................................14

*Walden v. Fiore*,
   571 U.S. 277 (2014)..............................................................................7, 8, 9

*In re Zynga Privacy Litig.*,
   750 F.3d 1098 (9th Cir. 2014) .....................................................................15

**Statutes**

18 U.S.C. § 2512 .............................................................................................18

Cal. Pen. Code § 631(a) ....................................................................10, 13, 18

Cal. Pen. Code § 635................................................................................ *passim*

Cal. Pen. Code § 637.2(a) ...............................................................................................................17

28 U.S.C. § 1332(d) .....................................................................................................................2, 5

**Other Authorities**

*Device*, Merriam-Webster.com Dictionary, https://www.merriam-
    webster.com/dictionary/device (last visited Nov. 13, 2020).................................................19

*Device*, Oxford English Dictionary, https://www.oed.com/view/Entry/51464 (last visited
    Nov. 13, 2020) ......................................................................................................................19

## NOTICE OF MOTION AND MOTION TO DISMISS

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on February 18, 2021, at 9:30 a.m., or as soon thereafter as available, in the courtroom of the Honorable Laurel Beeler, located at 450 Golden Gate Avenue, Courtroom B, 15th Floor, San Francisco, California 94102, Defendant FullStory, Inc. ("FullStory"), will and hereby does move pursuant to Federal Rules of Civil Procedure, 12(b)(1), 12(b)(2), and 12(b)(6) for an order dismissing with prejudice Plaintiffs' Complaint (Dkt. No. 1) ("Compl.") as asserted against FullStory.  This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the pleadings and papers on file in this action, any other such matters of which the Court may take judicial notice, and any other matter that the Court may properly consider.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether this Court should dismiss this Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

2.      Whether this Court should dismiss FullStory, Inc. from this action for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).

3.      Whether this Court should dismiss the claims in this action against FullStory, Inc. for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION AND SUMMARY OF ARGUMENT

FullStory is a service provider for retail and commercial website operators such as its co-defendant here, Noom, Inc. ("Noom").  Compl. ¶¶ 9, 12.  As alleged, companies like Noom deploy FullStory's software on their websites in order to understand and improve their websites' functionality.  *Id.* ¶ 17.  This, in turn, allows Noom to improve the user experience for visitors to its site.  *Id.*  For FullStory's software to work, Noom must add that software code to Noom's website.  *Id.* ¶ 24.  That software code collects certain usage information from visitors to Noom's website, and the information is used to inform the analytics that FullStory provides to Noom.  *Id.* ¶¶ 25–26.  Plaintiffs do not allege this information is used for any other purpose.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Put simply, this case is about a retailer's ability to understand how its website is functioning and how users are interacting with the website to ensure a smooth, error-free experience for the website visitor. Plaintiffs seek to criminalize this behavior. But Plaintiffs' arguments that this routine internet functionality amounts to unlawful wiretapping and eavesdropping are meritless. Stripped of conclusory legal assertions and hyperbole, the Complaint's factual allegations do not support Plaintiffs' claims. As such, the Court should dismiss the Complaint with prejudice for the reasons described below.

*First*, this Court should not consider the merits of the Complaint because the Plaintiffs do not adequately plead subject matter jurisdiction. Plaintiffs allege that this Court has subject matter jurisdiction here based on the Class Action Fairness Act, which in turn requires diversity of citizenship between at least one plaintiff and one defendant. Yet the Complaint fails to allege that either Plaintiff is *domiciled* in California, only that they are residents of California. This is insufficient. Defendants previously raised this issue with Plaintiff's counsel and suggested Plaintiffs correct this defect prior to this motion to dismiss; Plaintiffs declined.

*Second*, the Court lacks personal jurisdiction over FullStory, a Georgia-based company incorporated in Delaware. The Complaint is devoid of any allegations of forum-related conduct by FullStory and is contrary to the Supreme Court's recent personal jurisdiction holdings. So FullStory should be dismissed from this action.

*Third*, Plaintiffs have failed to state any claim under which they are entitled to relief. The California Invasion of Privacy Act ("CIPA") claims fail for multiple reasons. As to Plaintiffs' Section 631 claim, FullStory fits within the well-recognized party exception under CIPA. Because FullStory was not a third party to the communication, but instead an extension of Noom, FullStory cannot be held liable for eavesdropping under Section 631. In addition, Plaintiffs have failed to plausibly allege that the "contents" of their communications were intercepted "in transit," both essential elements of a Section 631 claim. Nor was any data collection alleged in the complaint surreptitious, as required by Section 631, given that everything complained of is fully disclosed in Noom's privacy policy (which is relied on in the complaint). Nor can Plaintiffs state a claim under Section 635, trafficking in or possessing a wiretap device, because Plaintiffs have not adequately alleged an underlying violation of that section,

which is required both to establish a private right of action and standing, to bring a Section 635 claim. Plaintiffs' Section 635 claim fails on the additional ground that FullStory's software-based service is not a "device" which is "primarily or exclusively designed or intended for eavesdropping."

*Fourth*, Plaintiffs have failed to state a claim for invasion of privacy under the California Constitution. Plaintiffs cannot plausibly allege that they held a reasonable expectation of privacy in the information allegedly collected because Plaintiffs themselves intentionally sent it to the Defendants. Nor have Plaintiffs plausibly alleged that the data collection at issue constitutes an "egregious breach of social norms." The only Plaintiff-specific information allegedly collected was information Plaintiffs intended to send to Noom. As a matter of law, such routine collection of data for analytics purposes cannot rise to the requisite level for invasion of privacy.

For these reasons, the Court should dismiss the Complaint entirely.

## II.  ALLEGATIONS OF THE COMPLAINT

### A.  FullStory's Software and Services

FullStory is a Delaware corporation headquartered in Atlanta, Georgia. Compl. ¶ 10. It provides a software-based service to companies that is designed to "improve the[] website design and customer experience" of the websites. Compl. ¶ 17. FullStory's customers embed FullStory's code on their own websites, which in turn allows those website operators to see certain information about how visitors to their websites are interacting with and utilizing the sites. *Id*. ¶ 34. Although incompletely and inaccurately described in the Complaint, as alleged, this code allows the FullStory software, in some instances, to recognize, collect, and display certain events such as "keystrokes" and "mouse clicks." *Id.* ¶ 33. It also allows FullStory to simulate a user's website interactions through the software's "Session Replay."[1] *Id.* ¶ 18.

---

[1] Plaintiffs misleadingly cite to FullStory's own website for their allegation that the Session Replay feature "relies on real video of a user's interactions with a website . . . ." Compl. ¶ 19. The website cited states exactly the opposite: that the "replay" is a "high-fidelity reproduction" of a user's interaction with the website, not an actual video. *The Definitive Guide to Session Replay*, FullStory, https://www.fullstory.com/resources/the-definitive-guide-to-session-replay (last updated Oct. 2019).

Noom, which provides diet products for healthier living, is one such customer that relies on FullStory for website analytics services.  *Id.* ¶ 31; *see id.* ¶¶ 4–5.  As Plaintiffs explain, Noom "voluntarily embedd[ed]" FullStory's code on its website "and pays FullStory to supply" the data that is needed to analyze how users interact with Noom's website, as shown in a session replay.  *Id.* ¶¶ 33–34.  The Complaint correctly observes that FullStory is not a software company in the traditional sense of someone who sells copies of its software; rather, FullStory provides "Software-as-a-Service" or "SaaS." *Id.* ¶ 11, 16.  Thus, instead of requiring its customers to purchase the software, install it on their own computers, and collect and host the website-interaction data on their own computers or servers, FullStory provides all of this for its customers, allowing its customers to interact with the data in the cloud, once the website operator has put FullStory on its website

### B.    Allegations Related to Plaintiffs

Plaintiffs Audra Graham and Stacy Moise are two California residents who allege that in November 2019 and June 2020 respectively they "browsed" Noom's website to investigate Noom's diet offerings.  Compl. ¶¶ 4–5.  As part of this browsing, Plaintiffs further allege that they submitted various information to Noom through various text boxes on Noom's website, including their email addresses, height, weight, age range, gender, and medical conditions (or lack thereof).  *Id.*  Plaintiffs allege that FullStory "recorded" this information for Noom in addition to Plaintiffs' other keystrokes and mouse clicks.  *Id.* ¶ 50.

Plaintiffs do not allege that FullStory did anything with their "communications" other than make them available to Noom, the very entity Plaintiffs were providing their information to anyway.  Plaintiffs also do not allege that FullStory or Noom sold or otherwise disclosed their data to any third parties, or that they were affected in any way by the alleged conduct.

## III.   LEGAL STANDARD

Federal courts have subject matter jurisdiction over only those matters authorized by the Constitution and Congress.  *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986).  In seeking to invoke a court's jurisdiction, plaintiffs bear the burden of proving that jurisdiction exists. *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986).

1

2

3

4

5

6

7

8

9

10

11

Plaintiffs bear the burden of supporting the exercise of personal jurisdiction over each defendant individually.  *See Brainerd v. Governors of the Univ. of Alta.*, 873 F.2d 1257, 1258 (9th Cir. 1989).  "Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits."  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citing Fed. R. Civ. P. 4(k)(1)(A)).  "California's long-arm statute permits a court to exercise personal jurisdiction over a defendant to the extent permitted by the Due Process Clause of the Constitution."  *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998) (citing Cal. Code Civ. Proc. § 410.10).  "[T]he determination whether an exercise of personal jurisdiction comports with due process remains whether the defendant purposefully established minimum contacts in the forum State."  *Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 108–09 (1987).

12

13

14

15

16

17

18

19

20

A motion to dismiss pursuant to Rule 12(b)(6) "tests the legal sufficiency of a claim."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A "threadbare" recitation of the elements of a cause of action does not suffice.  *Id*.  Neither do conclusory allegations or allegations that "merely track[] the language of the statute[s] [themselves], without providing facts to substantiate the claimed legal conclusions."  *Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*, 315 F. Supp. 3d 1147, 1175 (C.D. Cal. 2018); *see also In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (courts should not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences").

21

## IV.   ARGUMENT

22

### A.   Plaintiffs' Complaint Should Be Dismissed for Lack of Subject Matter Jurisdiction.

23

24

25

26

27

Plaintiffs allege that the Court possesses jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  Compl. ¶ 13.  That is incorrect.  CAFA requires diversity of citizenship, and a party's citizenship is based on where she is *domiciled*—not where she resides.  *See Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).  Plaintiffs' counsel is well aware of this, given that the Central District of California recently dismissed *sua sponte* a nearly-identical suit

28

they brought against FullStory and another of FullStory's customers on this very ground.  *See* Civil

Minutes, *Saleh v. Hudson's Bay Co. et al.*, No. cv-20-9095-PA (KSx) (C.D. Cal. Oct. 8, 2020) ("persons

are domiciled in the places they reside *with the intent to remain or to which they intend to return*")

(citation omitted) (emphases added); Judgment, *Saleh v. Hudson's Bay Co. et al.*, No. cv-20-9095-PA

(KSx) (C.D. Cal. Oct. 19, 2020).

Here, neither Plaintiff alleges she is domiciled in California, only that she *resides* in California.

Compl. ¶¶ 4–5.  Thus, Plaintiffs have not adequately alleged that at least one plaintiff and one defendant

are citizens of different states to establish diversity jurisdiction under CAFA.  Defendants alerted

Plaintiffs to this jurisdictional defect prior to this motion and suggested they correct it.  Plaintiffs

declined, requiring this needless motion practice.

### B.  FullStory Should Be Dismissed for Lack of Personal Jurisdiction.

In order for a court to exercise personal jurisdiction over a defendant, it must have either

"general" or "specific" personal jurisdiction.  *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*,

137 S. Ct. 1773, 1780 (2017).  For corporate entities, "the place of incorporation and principal place of

business are paradigm" examples of general jurisdiction.  *Daimler AG v. Bauman*, 571 U.S. 117, 137

(2014).  Additionally, general jurisdiction can exist as to a corporation outside of the forum where it is

incorporated or headquartered if its contacts are "so continuous and systematic as to render it essentially

at home" in a different forum.  *Id.* at 139.  Separately, for a finding that specific personal jurisdiction

exists, "the suit must arise out of or relate to the defendant's contacts with the forum."  *Bristol-Myers*,

137 S. Ct. at 1780.  "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction,

the plaintiff bears the burden of demonstrating that jurisdiction is appropriate."  *Schwarzenegger*, 374

F.3d at 800 (citation omitted).  Here, Plaintiffs fail to allege facts sufficient for the Court to exercise

either general or specific jurisdiction over FullStory.

### 1.  Plaintiffs Cannot Establish General Jurisdiction Over FullStory.

In recent years, the Supreme Court has repeatedly emphasized the limited circumstances under

which general jurisdiction applies.  For example, in *Daimler AG v. Bauman,* the Supreme Court held

that "only when the corporation's affiliations with the State in which suit is brought are so constant and

pervasive 'as to render [it] essentially at home in the forum State'" will general jurisdiction exist.  571 U.S. at 122 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)).  The *Daimler* Court clarified that the "paradigm" forums for general jurisdiction are the corporation's (i) place of incorporation and (ii) principal place of business.  *Id*. at 137.  Three years after *Daimler*, the Court again emphasized the narrow circumstances under which general jurisdiction can attach: "BNSF, we repeat, is not incorporated [in Montana] and does not maintain its principal place of business [in Montana].  Nor is BNSF so heavily engaged in activity in Montana 'as to render [it] essentially at home' in that State." *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1559 (2017) (citing *Daimler*, 571 U.S. at 137).

FullStory is neither incorporated in California nor does it have its principal place of business there.  *See* Compl. ¶ 10.  There are no allegations that FullStory has "so heavily engaged in activity" in California so as to make FullStory "essentially at home" in California.  *See BNSF*, 137 S. Ct. at 1559.  The Complaint thus fails to demonstrate FullStory is subject to general jurisdiction in California.

### 2.    Plaintiffs Cannot Establish Specific Jurisdiction Over FullStory.

The Ninth Circuit examines three factors to determine when a state has a sufficient interest in a lawsuit to justify the exercise of specific jurisdiction over a nonresident corporate defendant: (1) the defendant must have purposefully availed itself "of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;" (2) the cause of action must "arise[] out of or relate[] to the defendant's forum-related activities;" and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable." *Schwarzenegger*, 374 F.3d at 802. The plaintiff bears the burden on the first two prongs, and failure to establish either one requires dismissal for lack of personal jurisdiction. *Id*.

The Supreme Court has recently emphasized that to satisfy due process, the defendant's "challenged conduct" must "connect" it to the forum "in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014).  That is, "the defendant's *suit-related conduct* must create *a substantial connection* with the forum State." *Id.* at 284 (emphases added).  Here, the Complaint offers only this conclusory statement:  "This Court has personal jurisdiction over Defendants because each of the Defendants have purposefully availed themselves of the laws and benefits of doing business in this State, and Plaintiffs'

1
2
3

claims arise out of each of the Defendants' forum-related activities."  Compl. ¶ 14.  As explained below, this vague assertion, unsupported by any alleged *facts*, fails to satisfy either of the first two prongs under *Schwarzenegger*.

4
5

### a) The Complaint Contains No Allegations of Purposeful Direction by FullStory.

6
7
8
9
10
11
12
13

In tort actions, as here, the first prong of the *Schwarzenegger* test "focus[es] on whether a defendant purposefully directs [its] activities at the forum and on whether the effects of those activities are felt within the forum."  *Sun Grp. U.S.A. Harmony City, Inc. v. CRRC Corp. Ltd.*, 2018 WL 10689420, at *6 (N.D. Cal. July 9, 2018).  Such purposeful direction can be shown in two ways.  First, if "the commission of an intentional tort" took place in the forum, that will satisfy the purposeful direction test.  *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 604 (9th Cir. 2018) (finding personal jurisdiction existed in Nevada because that was the forum in which defendant made the defamatory statements).  Second, if the defendant's conduct "takes place outside the forum," there may still be purposeful direction if that conduct has "effects inside the forum state."  *Id.*

14
15
16
17
18
19
20
21

As the Complaint alleges, FullStory's business model involves "entering into voluntary partnerships with companies and providing their software to their partners."  Compl. ¶ 30.  In this case, FullStory allegedly contracted with Noom, Inc., a Delaware limited liability company with its principal place of business in New York.  *See id.* ¶ 6.  Plaintiffs do not allege that Noom and FullStory's licensing agreement was negotiated in California or entered into in California.  They do not allege that FullStory developed its software in California, or that FullStory has any other suit-related contacts to this forum other than the fact that Plaintiffs happened to be in California when they browsed Noom's website.  Under recent Supreme Court precedent, this is not enough.

22
23
24
25
26
27

"A forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct *by the defendant* that creates the necessary contacts with the forum."  *Walden*, 571 U.S. at 286 (emphasis added).  The *plaintiffs'* suit-related contacts with the forum are not at issue.  Here, California is not the focal point of any of FullStory's suit-related actions.  The most Plaintiffs can claim is that FullStory entered into a licensing agreement to provide software and services to an out-of-forum company whose website was available to California residents.  Such minimal suit-related contacts

28

---

DEFENDANT FULLSTORY, INC.'S MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE
12(b)(1), 12(b)(2), AND 12(b)(6)
Case No.: 3:20-cv-06903-LB
8

do not establish that FullStory purposefully directed its software at California.  *See Boschetto v. Hansing*, 539 F.3d 1011, 1018 (9th Cir. 2008) (plaintiff could not use eBay's national presence to establish personal jurisdiction in the forum solely because the seller sold its goods on eBay).

> **b)   There Are No Allegations that Plaintiffs' Claims Arise Out of or Relate to Forum-Related Activities By FullStory.**

Plaintiffs also must demonstrate that their claims arise out of or relate to *FullStory's* contacts *with California*.  *See Schwarzenegger*, 374 F.3d at 802.  There must be an "adequate link" between the defendant's contacts with the forum and the claims at issue.  *Bristol-Myers*, 137 S. Ct. at 1781.  Contacts unrelated to Plaintiffs' alleged claims will not suffice for specific jurisdiction.  *Id.* ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim *unrelated* to those sales.") (emphasis added).

Again, the Complaint contains *no* allegations of any forum-related contacts by FullStory, much less specific contacts giving rise to any of Plaintiffs' claims in this action.  "What is needed—and what is missing here—is a connection between the forum and the *specific claims at issue*."  *Id.* (citing *Walden*, 571 U.S. at 288–89) (emphasis added).  Plaintiffs' alleged harm from accessing Noom's website while in California does not establish forum-related contacts *as to FullStory*.  Just as in *Walden*, Plaintiffs would have experienced the same alleged harm by visiting Noom's website and interacting with FullStory's software regardless of the state they were in at the time they visited the website.  *See Walden*, 517 U.S. at 290.  Given the absence of any allegations demonstrating FullStory's forum-related conduct tied to this suit, the Court should dismiss FullStory for lack of personal jurisdiction.

> **c)   The Exercise of Jurisdiction Over FullStory in California Is Not Reasonable.**

The final prong of the *Schwarzenegger* test requires that "the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable."  *Schwarzenegger*, 374 F.3d at 802.  Here, FullStory, a Georgia-based company, contracted with Noom, based in New York.  It would be unreasonable to require FullStory to come to California to defend itself when FullStory never took any suit-related actions to avail itself of California and its laws.  Indeed, a finding of personal jurisdiction over FullStory here would effectively subject FullStory to personal jurisdiction in every

forum reached by any one of its customers' websites—effectively every forum in the country.  To allow FullStory to be hauled into court in every forum in the country where its customers' customers might be located would be unreasonable.

### C.   The Court Should Dismiss Each Claim in the Complaint, for Each Fails as a Matter of Law.

Even if the Court finds personal jurisdiction over FullStory, the Court should still dismiss each claim in the Complaint, for each fails as a matter of law.

#### 1.   Plaintiffs Fail To Plausibly Allege Facts to Support a CIPA Claim Under Section 631 (Count 1).

Section 631 of CIPA establishes liability, in relevant part, for:

> [a]ny person . . . [1] who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state, or [2] who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained . . . ."

Cal. Pen. Code § 631(a).  Put succinctly the section "proscribes third party access to ongoing communications."  *Powell v. Union Pac. R. Co.*, 864 F. Supp. 2d 949, 955 (E.D. Cal. 2012).  For several reasons, Plaintiffs' allegations fail the requirements of Section 631.

#### a)   FullStory Did Not Violate Section 631 Because Noom, Using FullStory's Technology, Was a Party to Plaintiffs' Purported Communications.

Section 631 only prohibits *third parties* from intruding upon a conversation.  It cannot be "a secret to one party to a conversation that the other party is listening to the conversation; only a third party can listen secretly to a private conversation."  *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (1975) ("'Eavesdropping' is the problem the Legislature meant to deal with; 'eavesdrop' is defined in Webster's 7th New Collegiate Dictionary (1972) as 'to listen secretly to what is said in private.'").  The statute does not create liability for someone "who is a 'party' to the communication."  *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020) ("*Facebook III*") (citing *Warden v.*

*Kahn*, 99 Cal. App. 3d 805, 811 (1979) ("[S]ection 631 . . . has been held to apply only to eavesdropping by a third party and not to recording by a participant to a conversation.").

While evaluating the party exception may be more straightforward in the context of telephonic communications—since CIPA was specifically drafted with those types of communications in mind—the same principles can be applied here, where Noom used FullStory's SaaS but did not inject FullStory into the "conversation" as a third party.  In *Rogers* for example, the court held that the defendant, a "public information officer" for San Jose, could not be liable for tape recording and disclosing a conversation he had with a candidate for city council where that candidate called the defendant and the defendant never alerted the candidate to his recording of the call.  52 Cal. App. 3d at 898 (Section 631 does not prohibit "the recording of a conversation made by a participant rather than by a third party.").  Similarly, in *Membrila v. Receivables Performance Management, LLC*, the court held that the defendant debt collector could not be liable for recording and monitoring various telephone conversations it had with the plaintiff because it was a party to those conversations.  2010 WL 1407274, at *2 (S.D. Cal. Apr. 6, 2010).  In the context of the internet, where evaluating the party exception may be less straightforward, the Ninth Circuit instructs courts to examine the "technical context" presented by the communications at issue to determine who the parties to those communications are.  *See Facebook III*, 956 F.3d at 607–08.

Here, based on Plaintiffs' own allegations, FullStory cannot be considered a third party to Plaintiffs' communications.  Plaintiffs allege that Noom voluntarily and intentionally embedded FullStory's software code on Noom's website, Compl. ¶¶ 33–34, and that Plaintiffs' data was transmitted to FullStory's servers so that FullStory could "make[] the information available to [Noom]." *Id*. ¶ 26.  In other words, FullStory provides a service to Noom for the sole purpose of providing analytics to Noom.  Notably, Plaintiffs nowhere allege that FullStory used Plaintiffs' data for any purpose other than to provide it to Noom—the party with which Plaintiffs were intending to communicate.  Plaintiffs do not, for example, allege that FullStory sold their data, used it for advertising purposes, or disclosed it to any third party.  Indeed, Plaintiffs allege precisely the opposite.  They allege that FullStory offers software-as-a-service; that is, Noom is effectively renting space on FullStory's

servers where Noom can store data related to website interactions and view that data using FullStory's dashboard.  *See* Compl. ¶ 11.

These actions do not amount to surreptitious wiretapping by a third party.  FullStory's involvement in facilitating the collection of data regarding Plaintiffs' interactions with Noom's website is simply the modern-day SaaS equivalent of the city information officer in *Rogers* having the phone company install a "tape recorder jack" on his phone so that he could, *inter alia*, record conversations and "relay parts of [those] conversations . . . to local radio stations for broadcast."  *Rogers*, 52 Cal. App. 3d at 897 (upholding dismissal of Section 631 claim where defendant was a party to the conversation he recorded).  Indeed, this is no different than if the defendant in *Rogers* had used SaaS to record, store, listen to, and analyze his conversations with the plaintiff there.  The Ninth Circuit's recent decision addressing the party exception demonstrates how FullStory's service is far afield from the actions of defendants that courts have found to be third parties to a communication.  In *Facebook III*, the Ninth Circuit held that Facebook could not avail itself of the party exception where Facebook allegedly used "plug-ins to track users' browsing histories when they visit[ed] third-party websites, and then compil[ed] these browsing histories into personal profiles which [were] sold to advertisers to generate revenue."  956 F.3d at 596.  Facebook's plug-ins performed these actions even if the visitor to the website was not signed into Facebook and there were no allegations that the websites with the plug-ins were using the plug-ins for their own purposes.  *Id*.

Here, based on Plaintiffs' own allegations, FullStory is not alleged to do anything of the sort.  Looking at the alleged "technical context," as *Facebook III* requires, Plaintiffs do not allege that FullStory did anything with the data allegedly collected from their interactions with Noom's website other than make it available to Noom to review, nor do they allege that FullStory otherwise operated like a third party in any respect.  The sole function of FullStory's code is to sit in Noom's own code on the website and allow Noom to see how users interact with its own website.  In other words, Noom uses FullStory's software the same way the defendants in *Rogers* and *Membrila* used recorders—behavior the courts there made clear was not prohibited under the statute.  *Rogers*, 52 Cal. App. 3d at 899; *Membrila*, 2010 WL 1407274 at *2.

Indeed, to hold that FullStory violates Section 631 in these circumstances would criminalize the ubiquitous use of cloud software that is required to ensure that websites, and indeed the internet in general, function.  Take this Court's website, for instance, https://www.cand.uscourts.gov/.  The Northern District of California's website utilizes a search function "Enhanced by Google" to allow visitors to search its website.  That search box, using Google's search engine, immediately starts populating suggested searches the moment a user starts typing information.  For example, if a user types in "L," Google automatically populates the search field with the suggested search "Laurel Beeler." Plaintiffs' theory of liability would mean that both the Court and Google are violating Section 631, as a user of the search function would be sharing its inquiry with Google.  And, Plaintiffs' theory would mean that *any* website that uses another party's software to power and enhance its function would be engaging in criminal eavesdropping—even where the software serves only to analyze information on the website and does not provide that information to anyone else for any other purposes (such as targeted advertising).  Because FullStory was a party to Plaintiffs' communications, it cannot be held liable under Section 631 and Count 1 should be dismissed.

### b)   FullStory Did Not Violate Section 631 Because the Software Did Not Intercept Communications "In Transit."

Section 631 makes it unlawful to "read[], or attempt[] to read, or to learn the contents or meaning of any message, report, or communication" only "while the same is *in transit*."  Cal. Pen. Code § 631(a). Thus, liability under the statute exists only when a defendant "intercepted" or "acquired [the communication] during transmission."  *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002); *see Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1051 (N.D. Cal. 2018) (CIPA's "in transit" element is analogous to the federal Wiretap Act's "intercepted" element and requires the same analysis). Reading or acquiring the contents of a communication either *before* or *after* that communication is transmitted, does not qualify.  *See Rosenow v. Facebook, Inc.*, 2020 WL 1984062 at *7 (S.D. Cal. Apr. 27, 2020) (no allegations plaintiff's communications were "in transit").  The communication must be "stop[ped], seize[d], or interrupt[ed] in progress or course before arrival."  *Konop*, 302 F.3d at 878 (citation omitted).

1
2
3
4
5
6
7
8
9
10

Following the Ninth Circuit's "narrow definition of intercept," courts have dismissed claims where a defendant "configured the [plaintiff's] email server software so that all Plaintiffs' messages were copied and forwarded to [defendant's] Google email account." *Bunnell v. Motion Picture Ass'n of Am.*, 567 F. Supp. 2d 1148, 1153–54 (C.D. Cal. 2007). The defendant's actions did not fit within the definition of intercept because copies of the communications were forwarded while the communications were *stored* locally on a server—not while in transit. Likewise, in *Opperman v. Path, Inc.*, the court dismissed a CIPA wiretap claim where the plaintiffs alleged that an app on their smartphones caused their contacts to be transmitted to the app developer's servers. 87 F. Supp. 3d 1018, 1063 (N.D. Cal. 2014). Because the data at issue was stored locally on the plaintiffs' devices, the defendant "did not intercept a communication" to collect the data. *Id.*

11
12
13
14
15
16
17
18
19
20
21
22

Here, as in *Bunnell* and *Opperman*, Plaintiffs do not actually allege that FullStory "intercepted" their communications. Those communications, by Plaintiffs' own allegations, were not seized while in transit. To the contrary, Plaintiffs allege that their "interactions" with Noom were stored "locally in [the plaintiffs'] broswer[s]" and that FullStory *then* "transmit[ted] that information" from Plaintiffs' browsers to FullStory's servers. Compl. ¶ 26. Plaintiffs' contradictory, and conclusory, allegations that their data was transmitted "in real time" do not cure this deficiency. *See* Compl. ¶¶ 4–5; *In re Vizio, Inc. Consumer Privacy Litig.* 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) (dismissing federal wiretap claim because plaintiffs' "vague allegations" of data collected "in real time" did not show communications were intercepted during transmission). Because the alleged data collection occurred while Plaintiffs' communications were stored locally on their browsers, Plaintiffs have failed to allege that FullStory intercepted their communications while in transit, requiring dismissal of Plaintiffs' Section 631 claim. *See Bunnell*, 567 F. Supp. 2d at 1153–54; *Opperman*, 87 F. Supp. 3d at 1063.

23
24
25
26
27

### c)   FullStory Did Not Violate Section 631 Because the Software Did Not Collect the "Contents" of Plaintiffs' Purported Communications.

Plaintiffs' Section 631 claim also fails because Section 631 prohibits only the "unauthorized access of the '*contents*' of any communication." *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) (emphasis added) (quoting Cal. Pen. Code § 631(a)). The analysis of whether something is the "contents" of a communication under CIPA is the same as it is under the federal Wiretap Act. *Id.*

28

(citation omitted).  Thus, "contents" means "the intended message conveyed by the communication . . . ."  *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014).  "Contents" does not include "information regarding the characteristics of the message that is generated in the course of the communication" such as "the name, address, and subscriber number or identity of a subscriber or customer."  *Id*. (quotation marks omitted); *see also United States v. Reed*, 575 F.3d 900, 917 (9th Cir. 2009) (holding "origination, length, and time" of telephone call was not "contents").

Here, Plaintiffs base their Section 631 claim at least in part on FullStory's purported capturing of data that are not the "contents" of their communications.  They allege that FullStory "captured the date and time of the visits, the duration of the visits, Plaintiffs' IP addresses, their locations at the time of the visits, their browser types, and the operating system on their devices."  Compl. ¶¶ 38, 41.  None of this information is "the intended message conveyed by the communication" but is instead "information regarding the characteristics of the message."  *In re Zynga*, 750 F.3d at 1106.  Just as in *Zynga*, this failure to allege the interception of the "contents" of Plaintiffs' communications requires dismissal of their claim as to any information that was not the "contents" of their communications.  *See id.* at 1100 (upholding the district court's dismissal of the claims against the defendants for the plaintiffs' failure to allege "contents" of communications had been disclosed).

Accordingly, the Court should dismiss Count 1 to the extent Plaintiffs attempt to base their claim on the purported collection of information that was not the "contents" of their communications.

> **d)      The Conduct Alleged Did Not Violate Section 631 Because It Was Disclosed in Noom's Privacy Policy, Relied on by the Complaint.**

The gravamen of a Section 631 claim is that a third party *surreptitiously* intruded upon a conversation.  "'Eavesdropping' is the problem the Legislature meant to deal with" in enacting Section 631.  *Rogers*, 52 Cal. App. 3d at 899.  "'[E]avesdrop' is 'to listen secretly to what is said in private.'"  *Id.* (quoting Webster's 7th New Collegiate Dictionary (1972)).  But there is nothing surreptitious or hidden about FullStory's service or data collection, as alleged.  The privacy policy for Noom's website explicitly disclosed to users like Plaintiffs that data regarding their interactions with the website could be collected by Noom *and by Noom's service providers*.  Indeed, it is the reality of modern websites that

they rely on service providers for their operation, and that a user's interactions with a website will be collected and shared with the website operator and its service providers.

Here, the Complaint explicitly references Noom's privacy policy and relies on it, so the Court may consider it at the pleading stage.  *See* Compl. ¶¶ 43–49.[2]  And, Noom's privacy policy discloses that Noom may engage in the exact actions alleged in the Complaint.  The Complaint notes that Plaintiffs were not required to consent to Noom's privacy policy, *see id.* ¶ 42, but nowhere alleges facts to support any inference that the alleged data collection was surreptitious.  Nor could Plaintiffs allege such facts, because Noom's policy explicitly states that Noom and third parties may collect information from users of Noom's website, and that such information may be shared with third parties like FullStory. *See Noom Privacy Policy*, Noom, https://web.noom.com/terms-and-conditions-of-use/noom-privacy-policy (last modified Dec. 17, 2018).  For example, the policy provides that "Noom's third-party service providers may use a variety of technologies that automatically (or passively) store or collect certain information whenever User visits or interacts with the Website."  *Id.*  The policy specifically notes that users' information may be collected using "an embedded script," as the Complaint alleges that FullStory does.  *See id.*

In other words, Noom disclosed to users like Plaintiffs the exact conduct of which Plaintiffs now complain.  For example, Plaintiffs allege that FullStory "secretly observe[d] and record[ed] website visitors' keystrokes, mouse clicks, and other electronic communications."  Compl. ¶ 1.  But the privacy policy discloses the collection of personal information when a user visits Noom's website, interacts with the website, uses any aspect of Noom's services, or otherwise contacts Noom.  *Noom Privacy Policy*. Moreover, the privacy policy specifically discloses, that "[i]n addition to any Personal Information or other information that [a u]ser choose[s] to submit to Noom via Noom's Website, Noom and Noom's

---

[2] Courts in this District routinely consider website privacy policies at the motion to dismiss stage where, as here, a plaintiff's claim depends on the language of the privacy policy and it is referenced in the complaint.  *See, e.g.*, *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1137 (N.D. Cal. 2015). Here, the Complaint acknowledges the presence of Noom's privacy policy and specifically alleges that Plaintiffs did not consent to the data collection at issue because Noom's privacy policy "does not mention any aspect of FullStory."  Compl. ¶ 48.

*third-party service providers* may use a variety of technologies that *automatically* (or passively) store or collect certain information whenever [a u]ser visits or interacts with the Website." *Id.* (emphases added). This usage information includes "the areas within Noom's Website" that a user visits and a "[u]ser's activities" on Noom's website. *Id.* Plaintiffs also allege that FullStory's supposed wiretap took the form of a "JavaScript snippet" that Noom embedded in the software code for its website. Compl. ¶ 24. However, Noom's privacy policy discloses this *exact* technology. The policy states that usage information can be collected using "embedded Scripts," explaining that:

> An embedded script is programming code that is designed to collect information about User's interactions with the Website, Mobile App and Services, such as the links User clicks on. The code is temporarily downloaded onto User's Device from Noom's web server and/or Mobile App or a *third party service provider*, is active only while User is connected to the Website and/or Mobile App, and is deactivated or deleted thereafter.

*Id.* (emphasis added). Plaintiffs cannot now claim that FullStory's conduct amounts to surreptitious wiretapping when Noom's publicly available privacy policy transparently disclosed the data collection at issue.

### 2. The Court Should Dismiss Count 2 Because Plaintiffs Lack Standing to Assert Such a Claim And Because The Complaint Fails To State a Claim Under Section 635.

Parroting the statute's language, Plaintiffs assert that FullStory violated Section 635 because "each Defendant intentionally manufactured, assembled, sold, offered for sale, advertised for sale, possessed, transported, imported, and/or furnished a wiretap device that is primarily or exclusively designed or intended for eavesdropping upon the communication of another." Compl. ¶ 72 (quoting Cal. Pen. Code § 635). This is incorrect for several independent reasons.

#### a) Plaintiffs Lack a Private Right of Action and Standing To Assert a Claim Under Section 635.

Plaintiffs lack both statutory and constitutional standing to bring a Section 635 claim. They lack a private right of action under Section 635 because, under CIPA, only those who have "been injured by a violation of this chapter may bring an action against the person who committed *the violation*." Cal. Pen. Code § 637.2(a) (emphasis added). But the mere manufacture, possession, or sale of an eavesdropping

"device" by a defendant (as alleged here under Section 635) causes no injury to a person such as Plaintiffs.  Indeed, in a case involving the analogous federal statute, 18 U.S.C. § 2512, the court held it would be "constitutionally problematic" to afford a private right of action against defendants who merely possessed a wiretapping device because "plaintiffs who suffered no injury in fact would still be able to sue."  *Cohen v. Casper Sleep, Inc.*, 2018 WL 3392877 at *5 (S.D.N.Y. July 12, 2018); *see In re Lenovo Adware Litig.*, 2016 WL 677245 at *7 (N.D. Cal. Oct. 27, 2016) (Section 2512 does not establish private right of action.).  Plaintiffs do not allege that they was injured in any way by the supposed violation of Section 635.  *See* Compl. ¶¶ 69–75.  Failing to offer such an allegation, Plaintiffs have no private right of action under Section 635.

For a parallel reason, Plaintiffs lack Article III standing to assert a claim under Section 635.  A plaintiff must have "suffered an injury in fact" to have standing.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  That is, she "must show that [she] . . . suffered an invasion of a legally protected interest that is concrete and particularized" from the alleged violation.  *Id*. at 1548 (citation omitted).  Defendants actions must have "affect[ed] the plaintiff in a personal and individual way."  *Id*.  And a plaintiff that demonstrates standing for a violation of one section of a statute does not meet automatically the standing requirement for a violation of another section of that same statute.  *See Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733–34 (2008).  Here, as noted, Plaintiffs make no allegation of injury from the alleged violation of Section 635.[3]  Claiming only that Defendants manufactured, sold, or possessed a "device" does not establish any harm to Plaintiffs different from any member of the public, so the requisite "injury in fact" required for standing under Article III is absent.  *See Spokeo*, 136 S.Ct. at 1547.

---

[3] Plaintiffs' allegations in support of their Section 631 claim explicitly contend that "[t]he violation of section 631(a) constitutes an invasion of privacy sufficient to confer Article III standing."  Compl. ¶ 66.  In notable contrast, Plaintiffs' Section 635 claim contains no such allegation as to any purported Article III injury.

1

2

### b) FullStory's Code Is Not a Device Primarily or Exclusively Designed for Eavesdropping.

Section 635 only applies to a "device" that is "primarily or exclusively" designed for eavesdropping. As an initial matter, there is no reason to think that FullStory's code, which Noom is alleged to have embedded on its website, qualifies as a "device" under the statute. Plaintiffs refer to it as a "snippet of code." Compl. ¶ 25. But courts in this District have rejected the argument that a "cookie" was a device where plaintiffs had defined cookie "as a small text file containing a limited amount of information which sits idly on a user's computer until contacted by a server." *See In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 937 (N.D. Cal. 2015) ("*Facebook I*"). There, in addressing a different section of CIPA, plaintiff alleged that a cookie was a "device" and thus qualified as a "machine, instrument, or contrivance" used to intercept communications. *Id.* The court rejected plaintiff's threadbare definition, holding that the plaintiffs must actually "include facts in their pleading to show why" the cookie was a "device" that could qualify as a "machine, instrument, or contrivance." *Id.*[4]

Even if FullStory's code can be considered a "device" the Complaint's factual allegations do not support a plausible inference that the code is "primarily or exclusively designed or intended for eavesdropping" as required by Section 635. In fact, because Plaintiffs have not established that the alleged data collection at issue here amounts to a violation of Section 631, that finding, as to any of the arguments advanced, also requires dismissal of Plaintiff's Section 635 claim. FullStory's software code

---

[4] Dictionary definitions support a narrow interpretation of "device" here. For example, Merriam-Webster defines "device" as "something devised or contrived: such as . . . a piece of equipment or a mechanism designed to serve a special purpose or perform a special function (smartphones and other electronic devices, a hidden recording device)." *Device*, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/device (last visited Nov. 13, 2020). And the Oxford English Dictionary defines "devices" as "an invention, contrivance; esp. a mechanical contrivance (usually of a simple character) for some particular purpose." *Device*, Oxford English Dictionary, https://www.oed.com/view/Entry/51464 (last visited Nov. 13, 2020). In addition, given that CIPA is a penal statute, any ambiguity in the meaning of the word "device" should be interpreted narrowly under the rule of lenity. *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1134 (9th Cir. 2009) (applying rule of lenity to civil application of penal statute).

cannot be primarily or exclusively designed for eavesdropping if Plaintiffs have failed to establish that eavesdropping occurred here.

In addition, rather than support the conclusory allegation that FullStory's code is "primarily or exclusively designed or intended for eavesdropping," the Complaint's factual allegations demonstrate the contrary: FullStory's software is designed and intended to help companies improve their websites. Plaintiffs allege that FullStory's software provides "marketing analytics."  Compl. ¶ 16.  And the Complaint notes that the purpose of FullStory's software is to "help businesses improve their website design and customer experience"—not to eavesdrop.  *Id.* ¶ 17.  Indeed, FullStory's software code and the service based on that software is best understood as "part of [the] routine internet functionality" that makes digital commerce possible.  *See In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 846 (N.D. Cal. 2017) ("*Facebook II*") ("[W]ebsites routinely embed content from third-party servers in the form of videos, images, and other media, as well as through their use of analytics tools, advertising networks, code libraries and other utilities.").  Digital retailers—and indeed websites of all kinds—use analytics software like FullStory's for a host of legitimate reasons that do not amount to eavesdropping. Permitting Plaintiffs' claims to proceed would subvert the network architecture on which the internet is built and could potentially render countless website operators liable as eavesdroppers.

Because Plaintiffs have failed to plausibly allege that FullStory's software code is either a "device" or is "primarily or exclusively designed for eavesdropping," the Court should dismiss Count 2.

### 3.    The Court Should Dismiss Count 3 Because Plaintiffs Cannot State a Claim for Invasion of Privacy Under the California Constitution.

Plaintiffs' claim for violations of their constitutional right to privacy fail as a matter of law.  An invasion of privacy claim under the California Constitution requires plaintiffs to show that (1) they possess a legally protected privacy interest, (2) they maintain a reasonable expectation of privacy, and (3) the intrusion is "so serious . . . as to constitute an egregious breach of the social norms" such that the breach is "highly offensive."  *Facebook III*, 956 F.3d at 601 (citing *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009)).  In determining whether a reasonable expectation of privacy exists, courts consider "whether a defendant gained unwanted access to data by electronic or other covert means, in violation of the law or social norms."  *Id.* at 601–02 (internal quotation marks and citations omitted).  "To make this

determination, courts consider a variety of factors, including the customs, practices, and circumstances surrounding a defendant's particular activities." *Id.* at 602.

Here, "the customs, practices, and circumstances surrounding" FullStory's actions demonstrate that Plaintiffs cannot plausibly allege a reasonable expectation of privacy in the information they provided to Noom and FullStory because Plaintiffs themselves *intentionally* provided it to the Defendants. That Plaintiffs allege they were unaware of FullStory's specific role in the website's functionality does not alter this analysis. The use of third-party vendors, programs, software, and third-party cloud storage for a variety of purposes is commonplace on the internet. Reasonable internet users recognize that when they input information on a website, the businesses running those websites "routinely embed content from third-party servers . . . through their use of analytics tools, advertising networks, code libraries and other utilities." *Facebook II*, 263 F. Supp. 3d at 846. Where, as here, data is allegedly provided by the consumer voluntarily to the retailer and collected for the purpose of running the website, Plaintiffs cannot plausibly allege a reasonable expectation of privacy in the information they provided.

Even if Plaintiffs could plausibly allege a reasonable expectation of privacy, the facts they allege do not permit a reasonable inference that the alleged breach of that privacy constitutes an "egregious breach of social norms." Invasions of privacy must be "sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 37 (1994). Courts typically find this standard is satisfied only in egregious circumstances, such as dissemination by the police of gruesome photographs of a deceased car accident victim, disclosure of a patient's HIV status, or improper use of confidential mental health records. *See, e.g.*, *Catsouras v. Dep't of Cal. Highway Patrol*, 181 Cal. App. 4th 856 (2010); *Urbaniak v. Newton*, 226 Cal. App. 3d 1128 (1991); *Taus v. Loftus*, 40 Cal. 4th 683 (2007).

Here, Plaintiffs allege, at most, that FullStory captured their "mouse clicks and keystrokes," which they speculate amounted to the collection of certain information they entered into text fields on Noom's website. Compl. ¶¶ 4–5. Accepting for the purpose of this motion that the facts alleged are

true, this is the very same information that Plaintiffs were purposefully providing to Noom and Plaintiffs nowhere allege that FullStory's software was doing anything beyond displaying this exact same information to Noom.  Courts in this district have found that "[e]ven *disclosure* of personal information, including social security numbers, does not constitute an 'egregious breach of the social norms.'"  *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (emphasis added); *see In re iPhone Application Litigation*, 844 F. Supp. 2d 1040, 1050, 1063 (N.D. Cal. 2012) (Apple's disclosure of much the same information allegedly collected here to third-party apps did not "constitute an egregious breach of social norms.").  It cannot be that a business egregiously breaches social norms when it receives the information the customer provided to it, and analyzes how the customer interacts with its own website— all of which occurs regularly on the internet.  Such a conclusion would be contrary to the established social norms on which internet commerce is based.

For these reasons, Plaintiffs' Count 3 fails as a matter of law and should be dismissed with prejudice.

## V.   CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiffs' Complaint as to FullStory with prejudice.

DATED:  December 11, 2020

COVINGTON & BURLING LLP

By:  */s/ Emily Johnson Henn*

EMILY JOHNSON HENN (SBN 269482)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: + 1 (650) 632-4700
Facsimile: + 1 (650) 632-4800
Email: ehenn@cov.com

SIMON J. FRANKEL (SBN 171552)
PATRICK R. CAREY (SBN 308623)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
Email: sfrankel@cov.com
Email: pcarey@cov.com

*Attorneys for Defendants*
*FullStory, Inc.*