**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
        jsmith@bursor.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUDRA GRAHAM and STACY MOISE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NOOM, INC. and FULLSTORY, INC.,<br><br>Defendants. | Case No. 3:20-cv-06903-LB<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

FIRST AMENDED CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED
CASE NO. 3:20-CV-06903-LB

Formatted: Border: Top: (No border)

1      Plaintiffs Audra Graham and Stacy Moise ("Plaintiffs"), individually and on behalf of all

2 others similarly situated, by and through their attorneys, make the following allegations pursuant to

3 the investigation of their counsel and based upon information and belief, except as to allegations

4 specifically pertaining to themselves and their counsel, which are based on personal knowledge.

5                          <u>**NATURE OF THE ACTION**</u>

6      1.      This is a class action suit brought against Defendants Noom, Inc. ("Noom") and

7 FullStory, Inc. ("FullStory") (collectively, "Defendants") for wiretapping the electronic

8 communications of visitors to Defendant Noom's website, Noom.com (the "Website").[1]  The

9 wiretaps, which are embedded in the computer code on the Website, are used by Defendants to

10 secretly observe and record website visitors' keystrokes, mouse clicks,[2] and other electronic

11 communications, including the entry of Personally Identifiable Information ("PII") and Protected

12 Health Information ("PHI"), in real time.  By doing so, Defendants have violated the California

13 Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 631 and 635, and invaded Plaintiffs'

14 class members' privacy rights in violation of the California Constitution.

15      2.      On November 17, 2019, Ms. Graham visited the Website.  Likewise, on June 23,

16 2020, Ms. Moise visited the Website.  During the visits, Defendants recorded Plaintiffs' electronic

17 communications in real time, used the intercepted data to attempt to learn their e-mail, height,

18 weight, age range, gender, medical conditions, and other PII and PHI.

19      3.      Plaintiffs bring this action on behalf of themselves and a class of all persons whose

20 electronic communications were intercepted through the use of Defendants' wiretap on the Website.

21                          <u>**THE PARTIES**</u>

22      4.      Plaintiff Audra Graham is a California citizen and resident who lives in Oakland,

23 California.  Ms. Graham is domiciled and intends to remain in California.  On November 17, 2019,

24 prior to the filing of this lawsuit, Ms. Graham browsed the Website on her computer while

25

26 _____

[1] NOOM, https://www.noom.com/#/ (last accessed Sept. 9, 2020).

27 [2] As used herein, the term "mouse clicks" also refers to "touch gestures" such as the "tap," "swipe,"
and similar gestures used on touchscreen devices.

28 FIRST AMENDED CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                    1
CASE NO. 3:20-CV-06903-LB

**Formatted:** Normal, Indent: Left:  0", Hanging:  0.19",
Space After:  12 pt, Line spacing:  Exactly 12 pt, Border: Top:
(No border)

1   investigating Defendant Noom's diet offerings.  Ms. Graham was in Oakland when she visited the

2   Website.  During the visit, Ms. Graham's keystrokes, mouse clicks, and other electronic

3   communications—including the entry of her e-mail, height, weight, age range, gender, medical

4   conditions, and other PII and PHI—were intercepted in real time and were disclosed to Defendants

5   Noom and FullStory through the wiretap.  Ms. Graham was unaware at the time that her keystrokes,

6   mouse clicks, and other electronic communications, including the information described above,

7   were being intercepted in real-time and would be disclosed to FullStory, nor did Ms. Graham

8   consent to the same.

9         5.      Plaintiff Stacy Moise is a California citizen and resident who lives in Pasadena,

10   California.  Ms. Moise is domiciled and intends to remain in California.  On June 23, 2020, prior to

11   the filing of this lawsuit, Ms. Moise browsed the Website on her cell phone while investigating

12   Defendant Noom's diet offerings.  Ms. Moise was in Canyon Country, California when she visited

13   the Website.  During the visit, Ms. Moise's keystrokes, mouse clicks, and other electronic

14   communications—including the entry of her e-mail, height, weight, age range, gender, medical

15   conditions, and other PII and PHI—were intercepted in real time and were disclosed to Defendants

16   Noom and FullStory through the wiretap.  Ms. Moise was unaware at the time that her keystrokes,

17   mouse clicks, and other electronic communications, including the information described above,

18   were being intercepted in real-time and would be disclosed to FullStory, nor did Ms. Moise consent

19   to the same.  In fact, Ms. Moise never signed up to use Defendant Noom's services.

20         6.      Defendant Noom, Inc. is a Delaware limited liability company with its principal place

21   of business at 229 West 28th Street, 9th Floor, New York, New York 10001.

22         7.      Upon information and belief, the Website was visited over five million times in

23   August 2020 alone.[3]

24         8.      Noom does business throughout California and the entire United States.

25         9.      Noom owns and operates the Website.

26         10.     Defendant FullStory is a Delaware corporation with its principal place of business at

27   _____

28   [3] https://www.similarweb.com/website/noom.com/.

FIRST AMENDED CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                           2
CASE NO. 3:20-CV-06903-LB

**Deleted:** Pasadena

**Formatted:** Normal, Indent: Left:  0", Hanging:  0.19", Space After:  12 pt, Line spacing:  Exactly 12 pt, Border: Top: (No border)

1   1745 Peachtree Street Northwest, Suite G, Atlanta, Georgia 30309.

2         11.    FullStory is a marketing software-as-a-service ("SaaS") company.

3         12.    FullStory provides a feature called "Session Replay," which is at issue here and

4   described more fully below.  At all relevant times here, Noom has used FullStory's "Session

5   Replay" product on its website.

6                    **JURISDICTION AND VENUE**

7         13.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A)

8   because this case is a class action where the aggregate claims of all members of the proposed class

9   are in excess of $5,000,000.00, exclusive of interest and costs, and at least one member of the

10  proposed class is citizen of state different from at least one Defendant.

11        14.    This Court has personal jurisdiction over Defendants because each of the Defendants

12  have purposefully availed themselves of the laws and benefits of doing business in this State, and

13  Plaintiffs' claims arise out of each of the Defendants' forum-related activities.  Furthermore, a

14  substantial portion of the events giving rise to Plaintiffs' claims occurred in this District.

15        15.    Both Defendants also purposefully directed their activities to California, and the

16  wiretapping at issue here arises from or relates to Defendants' activities.  As alleged more fully

17  below, Defendants intentionally installed the wiretap at issue here on Noom's Website.  Defendant

18  FullStory purposefully intercepted electronic transmissions from users of Noom's website, and

19  Noom purposefully aided and abetted FullStory's conduct.  The conduct also was expressly aimed

20  at California residents.  California is the largest market in the United States—indeed, if California

21  were its own nation, California would have the fifth largest economy in the world.   The Website

22  operates in both English and Spanish, the first and second most common languages spoken by

23  California residents.   Defendants knew that a significant number of Californians would visit

24  Noom's website, because they form a significant portion of Noom's customer base.  By intercepting

25  the transmissions of Noom website users, Defendants targeted their wrongful conduct at customers,

26  some of whom Defendants knew, at least constructively, were residents of California.  It was

27  foreseeable that Defendants' interceptions and wiretapping would harm Plaintiffs and similarly-

28  FIRST AMENDED CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED        3
    CASE NO. 3:20-CV-06903-LB

**Formatted:** Normal, Indent: Left:  0", Hanging:  0.19",
Space After:  12 pt, Line spacing:  Exactly 12 pt, Border: Top:
(No border)

1  situated individuals, and that at least some of this harm would occur in California—where

2  Defendants knew many customers and prospective customers resided.

3      16.     Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a

4  substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this

5  District.

6                          **STATEMENT OF FACTS**

7  **I.   Overview Of The Wiretaps**

8      17.     Defendant FullStory develops a software of the same name that provides marketing

9  analytics.

10     18.     One of FullStory's features is called "Session Replay," which purports to help

11 businesses improve their website design and customer experience.

12     19.     FullStory says that "Session replay tools capture things like mouse movements,

13 clicks, typing, scrolling, swiping, tapping, etc." on a given website.

14     20.     Session replay technologies work by using "embedded snippets of code … [that]

15 watch and record a visitor's every move on a website, in real time."[4]

16     21.     FullStory touts that Session Replay relies on real video of a user's interactions with a

17 website, or, in other words, a "recorded session."[5]

18     22.     To demonstrate how Session Replay works, FullStory displays the "recorded session

19 of a fictional user interacting with th[e] [Session Replay] Guide":

20 //

21 //

22 //

23 //

24 //

25 //

26 ―――――――――――
[4] Tomas Foltyn, *What's the Deal with Session-Replay Scripts?*, WeLiveSecurity, Apr. 20, 2018,
27 https://www.welivesecurity.com/2018/04/20/whats-deal-session-replay-scripts/.
[5] https://www.fullstory.com/resources/the-definitive-guide-to-session-replay/.

28 FIRST AMENDED CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED            4
   CASE NO. 3:20-CV-06903-LB

---

**Deleted:** Session Replay provides a real-time recording of a user's interactions on a website.

**Deleted:** *<object>*

**Deleted:** /

**Formatted:** Normal, Indent: Left:  0", Hanging:  0.19", Space After:  12 pt, Line spacing:  Exactly 12 pt, Border: Top: (No border)



23.     FullStory describes the above video as follows:

Here you can watch a FullStory session replay of a user—Daniel Falko—flipping through *The Definitive Guide to Session Replay*. **Notice how you can see interactions, mouse movements, clicks, interactions with overlays, and more**—and everything is listed in order in a stream at the right side of the replay. This is what a session replay looks like in the FullStory app.[6]

24.     FullStory's promotional video shows the behind-the-scenes features of the software. First, FullStory lets you view a list of users who visited the website, as well as the time they spent on the website:

//

//

//

---

[6] https://www.FullStory.com/resources/the-definitive-guide-to-session-replay/#finding-the-right-session-replay-tool (emphasis added).

Formatted: Line spacing:  Exactly 6 pt

Formatted: Normal, Indent: Left:  0", Hanging:  0.19", Space After:  12 pt, Line spacing:  Exactly 12 pt, Border: Top: (No border)



25.   Upon clicking one of these "sessions," FullStory lets a company view the video of a user's interaction with a website, including mouse movements, clicks, interactions with overlays, keystrokes, geographic location, IP address, and more "to see the real customer experience behind the data":



Deleted: <object><object>

Formatted: Normal, Indent: Left:  0", Hanging:  0.19", Space After:  12 pt, Line spacing:  Exactly 12 pt, Border: Top: (No border)

1    26.    FullStory instructs prospective partners that "[t]he first step toward recording all in-
2  browser interactions and making them available for pixel-perfect playback is deploying FullStory's
3  recording JavaScript snippet.  Simply paste the snippet into the <head> element via your Content
4  Management System (CMS), via your online store platform, or via your application's code."

5    27.    This snippet of code allows Defendants to record the keystrokes, mouse clicks, data
6  entry, and other electronic communications of visitors to websites where the code is installed.  It
7  also allows Defendants to track the amount of time spent on the website, geographic location of the
8  visitor, and other information described above.

9    28.    FullStory's code is not a cookie at all, much less a run-of-the-mill cookie.  Common
10  cookies that consumers might be familiar with do not engage in session recording or all of the
11  features described above.  FullStory's code does far more than simply track where a visitor went on
12  the internet, and its functionality is not limited to aggregate data.  Rather, as a 2017 study by
13  Princeton University researchers—which specifically examined FullStory—noted, "unlike typical
14  analytics services that provide aggregate statistics, these scripts are intended for the recording and
15  playback of individual browsing sessions, as if someone is looking over your shoulder."

16    29.    When the website user's communications are transmitted to Noom's Website,
17  FullStory records the website user's interactions locally in the user's browser in real time, and then
18  transmits that information to FullStory's recording servers every few seconds.  FullStory then
19  makes the information available to its clients.

20    30.    FullStory not only records users' electronic communications in real time for later
21  viewing, but also allows websites to monitor them *live*.  "For sessions that are actively recording
22  and we are still receiving events from a user (meaning the last page in their session is still open),
23  you'll see a 'Go Live' button at the end of the playback bar.  Once you click on the button, you'll
24  essentially be riding along in near real time with the user with no need to refresh the playback."

25    31.    The 2017 study by Princeton University researchers shows this process in action.  In
26  the first screenshot below, a mock user visits a website and enters information:
27  //

28

---

**Deleted:**

**Deleted:** .

**Deleted:** can
**Deleted:** record
**Deleted:** , it can

**Deleted:** you'll
**Deleted:** you'll

**Formatted:** Normal, Indent: Left:  0", Hanging:  0.19",
Space After:  12 pt, Line spacing:  Exactly 12 pt, Border: Top:
(No border)

32.     In the second screenshot, one can see FullStory's dashboard.[7]  The information is simultaneously recorded by FullStory, and less than a second later, the user's actions can be seen in FullStory's recording:

//

---

[7] These two images are displayed side-by-side in the study.  Plaintiffs have separated the two images so that they can be made larger for clarity.

FIRST AMENDED CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED
CASE NO. 3:20-CV-06903-LB

8

**Formatted:** Normal, Indent: Left:  0", Hanging:  0.19", Space After:  12 pt, Line spacing:  Exactly 12 pt, Border: Top: (No border)



33.   FullStory's recording is not limited to desktop website, but also mobile websites and mobile applications.[8]

34.   Technology like FullStory's Session Replay feature is not only highly intrusive, but dangerous.  The 2017 study by Princeton University researchers found that session recording technologies were collecting sensitive user information such as passwords and credit card numbers.

_____

[8] https://www.fullstory.com/mobile-apps/.

FIRST AMENDED CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED          9
CASE NO. 3:20-CV-06903-LB

Deleted: A

Formatted: Normal, Indent: Left: 0", Hanging: 0.19", Space After: 12 pt, Line spacing: Exactly 12 pt, Border: Top: (No border)

1 The research notes that this wasn't simply the result of a bug, but rather insecure practices.  Thus,

2 session recording technologies such as FullStory's can leave users vulnerable to data leaks and the

3 harm resulting therefrom.

4      35.     FullStory's business model involves entering into voluntary partnerships with

5 various companies and providing their software to their partners.

6      36.     One of FullStory's partners is Defendant Noom.

7      37.     Noom utilizes FullStory's software on the Website.

8      38.     Noom knows that FullStory's software captures the keystrokes, mouse clicks and

9 other communications of visitors to its website, and pays FullStory to supply that information.

10      39.     Pursuant to an agreement with FullStory, Noom enabled FullStory's software by

11 voluntarily embedding FullStory's software code on the Website.

12      40.     As currently deployed, FullStory's software, as employed by Noom, functions as a

13 wiretap.

14 **II.**    **Defendants Wiretapped Plaintiffs' Electronic Communications**

15      41.     On November 17, 2019, Ms. Graham visited the Website.

16      42.     Likewise, on June 23, 2020, Ms. Moise visited the Website.

17      43.     During those visits, and upon information and belief, the Session Replay feature in

18 FullStory's software created a video capturing each of Plaintiffs' keystrokes and mouse clicks on

19 the website.  The FullStory wiretap also captured the date and time of the visits, the duration of the

20 visits, Plaintiffs' IP addresses, their locations at the time of the visits, their browser types, and the

21 operating system on their devices.

22      44.     FullStory's recording of keystrokes, mouse clicks, data entry, and other electronic

23 communications begins the moment a user accesses or interacts with the Website.

24      45.     When users access Defendant Noom's website, they fill out a form and enter PII and

25 PHI. FullStory's software captures these electronic communications throughout each step of the

26 process.  Even if users do not complete the form, the Website nonetheless captures users' electronic

27 communications throughout his or her visit.

28 FIRST AMENDED CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED          10
CASE NO. 3:20-CV-06903-LB

**Deleted:** FullStoryFullStory's

**Formatted:** Don't keep with next, Don't keep lines together

**Formatted:** Normal, Indent: Left:  0", Hanging:  0.19", Space After:  12 pt, Line spacing:  Exactly 12 pt, Border: Top: (No border)

46.   On Noom's website, FullStory's software captures, among other things:

    (a) The user's height and weight;

    (b) The user's gender;

    (c) The user's age range;

    (d) The user's diet and exercise habits;

    (e) Whether the user has "significant back issues";

    (f) Whether the user has any of a handful of medical conditions

    (g) Whether the user has ever been "diagnosed with or received treatment for diabetes";

    (h) The user's email;

    (i) The user's IP address;

    (j) The user's their location at the time of the visit; and

    (k) The user's browser type and the operating system on their devices

47.   Crucially, Defendant Noom does not ask users, including Plaintiffs, whether they consent to being wiretapped by FullStory. Users are never told that their electronic communications are being wiretapped by FullStory.

48.   Noom's Privacy Policy did not disclose the wiretapping for two reasons. First, to the extent Noom's home page contained a link to the Privacy Policy, it was buried at the very bottom of the webpage in small, non-contrasting font (i.e., light grey against a white background) that was designed to be unobtrusive and easy to overlook. Visitors to the website are given no notice and are not prompted to take any affirmative action to demonstrate assent. Visitors are not required to read or acknowledge the Privacy Policy to use the website. In any event, by the time a website user visited the Privacy Policy, the wiretap on Noom's website will have already deployed.

49.   Second, when a user begins using Noom's website and providing personal information, such as weight loss goals, age and weight, etc., the hyperlink to Defendant's Privacy Policy disappears until the end of the form on the Website, i.e. after the wiretap has already been deployed. Even then, users are never given the option to accept the Privacy Policy by clicking a

Deleted: actively

Deleted: Further, users

Deleted: not presented with a

Deleted: ¶
Moreover

Formatted: Normal, Indent: Left:  0", Hanging:  0.19",
Space After:  12 pt, Line spacing:  Exactly 12 pt, Border: Top:
(No border)

1    button. Noom does not say that by clicking "See My Result," users accept the Privacy Policy; in

2    fact, Noom never tells users *how* to accept the Privacy Policy. And even if a user passively accepts

3    the Privacy Policy by using the Website—which users do not—this purported consent is invalid

4    because users are not shown a link to the Privacy Policy until *after* their privacy has already been

5    breached by the wiretap.

6        50.    Therefore, users like Plaintiffs never agree or are never given the option to agree to

7    the Privacy Policy when using the Website.

8        51.    In addition, the hyperlink to the Privacy Policy—which, again, is not displayed until

9    the end of the form—is in the smallest text on the screen, not underlined, is not the typical color for

10    a hyperlink, is not in all caps, and is surrounded by much more obvious and distracting features,

11    such as the large orange "See My Result" button. These issues are displayed in the below

12    screenshot of the Website:

Deleted: , are told
Deleted: they
Deleted: , or are otherwise told
Deleted: assuming *arguendo* that
Deleted: ,
Deleted: problematic and
Deleted:
Deleted: (light blue),
Formatted: Normal, Indent: Left: 0", Hanging: 0.19", Space After: 12 pt, Line spacing: Exactly 12 pt, Border: Top: (No border)

52.     Users, including Plaintiffs, are thus not on notice of the Privacy Policy when they click "See My Result."

53.     Second, even if users do agree to the Privacy Policy by using the Website or otherwise—and they do not for the reasons stated above—Noom's Privacy Policy does not mention FullStory or its Session Replay feature in Noom's Privacy Policy.  At best, the Privacy Policy consists of vague generalities and disclosures that the website "may" use certain general information such as a user's IP address or operating system, or "may" use various available data collection technologies.  Disclosing that Noom has the *capacity* to monitor certain information is not the same as seeking consent to record keystrokes, mouse clicks and other communications in real time.  Indeed, unlike Noom, other companies actively disclose the use of session recording technology on their websites by implementing a pop-up screen that a user must acknowledge before advancing further on the website.  That practice goes to show that companies know how to disclose the use of session recording technology when they want to.  As such, users do not agree to be wiretapped even if they agree to the Privacy Policy.

54.     Further, Noom misrepresents certain aspects of its Privacy Policy.  For instance, Noom states in the "Embedded Scripts" section that *if* an Embedded Script is used (the Privacy Policy does not say either way), then "[t]he code is temporarily downloaded onto User's Device from Noom's web server and/or Mobile App or a third party service provider, is active only while User is connected to the Website and/or Mobile App, and is deactivated or deleted thereafter."  But the code is not "deactivated or deleted." As FullStory notes on its website:

> If the user navigates away or closes their tab—which is normal behavior—FullStory bundles these events together into a "swan song" bundle, that is, a last ditch attempt to send the event data to FullStory before the page closes. **In some instances, the swan song isn't successful, so the data is stored locally in the user's browser, and the next time the user on that particular device visits the customer's site, the FullStory script will send the swan song data that weren't successfully sent on the user's last visit.** These swan song events will be processed and appear as part of the original FullStory session.[9]

---

[9] https://help.fullstory.com/hc/en-us/articles/360048109714-Swan-songs-How-FullStory-records-sessions-that-end-unexpectedly (emphasis added).

FIRST AMENDED CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED          13
CASE NO. 3:20-CV-06903-LB

55.    In addition, as the 2017 Princeton University study researchers recognized, "the extent of data collected by these services **far exceeds user expectations** [1]; text typed into forms is collected before the user submits the form, and precise mouse movements are saved, all without any visual indication to the user. This data can't reasonably be expected to be kept anonymous." Thus, a reasonable user reviewing Noom's Privacy Policy would not expect it to allow the real-time recording of said user's actions on the Website.

56.    Neither Plaintiffs nor any Class member consented to being wiretapped on the Website, or to have their communications recorded and shared with FullStory.  Any purported consent that was obtained was ineffective because (i) the wiretapping began from the moment Plaintiffs and Class members accessed the Website; (ii) the Privacy Policy did not disclose the wiretapping or FullStory; (iii) Plaintiffs and Class members are not given the option to accept the Privacy Policy, or told how they can accept it; and (iv) the hyperlink to the Privacy Policy is inconspicuous and therefore insufficient to provide notice.

<div align="center">

**CLASS ACTION ALLEGATIONS**

</div>

57.    Plaintiffs seek to represent a class of all California residents who visited Noom.com, and whose electronic communications were intercepted or recorded by FullStory.  Plaintiffs reserve the right to modify the class definition as appropriate based on further investigation and discovery obtained in the case.

58.    Members of the Class are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class number in the thousands.  The precise number of Class members and their identities are unknown to Plaintiffs at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants.

59.    Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to, whether Defendants have violated the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631 and invaded Plaintiffs' privacy rights in violation of the

1  California Constitution; and whether class members are entitled to actual and/or statutory damages

2  for the aforementioned violations.

3      60.    The claims of the named Plaintiffs are typical of the claims of the Class because the

4  named Plaintiffs, like all other class members, visited the Website and had their electronic

5  communications intercepted and disclosed to FullStory through the use of FullStory's wiretaps.

6      61.    Plaintiffs are adequate representatives of the Class because their interests do not

7  conflict with the interests of the Class members they seek to represent, they have retained

8  competent counsel experienced in prosecuting class actions, and they intend to prosecute this action

9  vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiffs and

10  their counsel.

11      62.    The class mechanism is superior to other available means for the fair and efficient

12  adjudication of the claims of Class members.  Each individual Class member may lack the resources

13  to undergo the burden and expense of individual prosecution of the complex and extensive litigation

14  necessary to establish Defendants' liability.  Individualized litigation increases the delay and

15  expense to all parties and multiplies the burden on the judicial system presented by the complex

16  legal and factual issues of this case.  Individualized litigation also presents a potential for

17  inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer

18  management difficulties and provides the benefits of single adjudication, economy of scale, and

19  comprehensive supervision by a single court on the issue of Defendants' liability.  Class treatment

20  of the liability issues will ensure that all claims and claimants are before this Court for consistent

21  adjudication of the liability issues.

22      63.    Plaintiffs bring all claims in this action individually and on behalf of members of the

23  Class against Defendants.

<div align="center">

**COUNT I**
**Violation Of The California Invasion Of Privacy Act,**
**Cal. Penal Code § 631**

</div>

24

25

26      64.    Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set

27  forth herein.

28

FIRST AMENDED CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED          15
CASE NO. 3:20-CV-06903-LB

Formatted: Normal, Indent: Left:  0", Hanging:  0.19",
Space After:  12 pt, Line spacing:  Exactly 12 pt, Border: Top:
(No border)

65.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Defendants.

66.     To establish liability under section 631(a), Plaintiffs need only establish that Defendants, "by means of any machine, instrument, contrivance, or in any other manner," did any of the following:

> Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,
>
> *Or*
>
> Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,
>
> *Or*
>
> Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,
>
> *Or*
>
> Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

67.     Section 631(a) is not limited to phone lines, but also applies to "new technologies" such as computers, the Internet, and email. *See Matera v. Google Inc.*, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *Bradley v. Google, Inc.*, 2006 WL 3798134, at *5-6 (N.D. Cal. Dec. 22, 2006) (CIPA governs "electronic communications"); *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020) (reversing dismissal of CIPA and common law privacy claims based on Facebook's collection of consumers' Internet browsing history).

68.     FullStory's software, including its Session Replay feature, is a "machine, instrument, contrivance, or … other manner" used to engage in the prohibited conduct at issue here.

69.     At all relevant times, by using FullStory's technology, Defendants intentionally tapped, electrically or otherwise, the lines of internet communication between Plaintiffs and class members on the one hand, and Noom's Website on the other hand.

70.     At all relevant times, by using FullStory's technology, Defendants willfully and without the consent of all parties to the communication, or in any unauthorized manner, read or attempted to read or learn the contents or meaning of electronic communications of Plaintiffs and putative class members, while the electronic communications were in transit or passing over any wire, line or cable or were being sent from or received at any place within California.

71.     As FullStory notes on its website, "When an end user session is recorded by the FullStory script, FullStory starts by recording event data locally in the browser. Every few seconds, this local event data is packaged up and sent to FullStory recording servers in the form of bundles." Such local recording is plainly occurring in real-time, and is, at worst, "transitory electronic storage" that is "part of the overall transmission process," which has been held to constitute communications "in transit."

72.     Defendants aided, agreed with, and conspired with each other to implement FullStory's technology and to accomplish the wrongful conduct at issue here.  In addition, Noom employed FullStory to accomplish the wrongful conduct at issue here.

73.     Plaintiffs and Class Members did not consent to any of Defendants' actions in implementing FullStory's wiretaps on the Website.  Nor have Plaintiffs or Class Members consented to Defendants' intentional access, interception, reading, learning, recording, and collection of Plaintiffs and Class Members' electronic communications.

74.     The violation of section 631(a) constitutes an invasion of privacy sufficient to confer Article III standing.

75.     Unless enjoined, Defendants will continue to commit the illegal acts alleged here. Plaintiffs continue to be at risk because they frequently use the internet to search for information

Formatted: Normal, Indent: Left:  0", Hanging:  0.19", Space After:  12 pt, Line spacing:  Exactly 12 pt, Border: Top: (No border)

1  about products or services.  They continue to desire to use the internet for that purpose, including

2  for the purpose of shopping for various diets, weight loss plans, or other health-related products.

3  Defendant FullStory provides its software, including the Session Replay feature, to many other

4  website operators who offer a wide array of services.  For many websites that Plaintiffs may or are

5  likely to visit in the future, they have no practical way to know if their website communications will

6  be monitored or recorded by FullStory.

7       76.     Plaintiffs and Class Members seek all relief available under Cal. Penal Code § 637.2,

8  including injunctive relief and statutory damages of $5,000 per violation.

9  <div align="center">**COUNT II**<br>**Violation Of The California Invasion Of Privacy Act,**<br>**Cal. Penal Code § 635**</div>

10

11       77.     Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set

12  forth herein.

13       78.     Plaintiffs bring this claim individually and on behalf of the members of the proposed

14  Class against Defendants.

15       79.     California Penal Code § 635 provides, in pertinent part:

16          Every person who manufactures, assembles, sells, offers for sale,

17  advertises for sale, possesses, transports, imports, or furnishes to another any device which is primarily or exclusively designed or

18  intended for eavesdropping upon the communication of another, or any device which is primarily or exclusively designed or intended for the

19  unauthorized interception or reception of communications between cellular radio telephones or between a cellular radio telephone and a

20  landline telephone in violation of Section 632.5, or communications between cordless telephones or between a cordless telephone and a

21  landline telephone in violation of Section 632.6 , shall be punished by a fine not exceeding two thousand five hundred dollars.

22

23       80.     At all relevant times, by implementing FullStory's wiretaps, each Defendant

24  intentionally manufactured, assembled, sold, offered for sale, advertised for sale, possessed,

25  transported, imported, and/or furnished a wiretap device that is primarily or exclusively designed or

26  intended for eavesdropping upon the communication of another.

27

28

1    81.    FullStory's code is a "device" that is "primarily or exclusively designed" for

2  eavesdropping.  That is, the FullStory's code is designed to gather PII, including keystrokes, mouse

3  clicks, and other electronic communications.

4    82.    Plaintiffs and Class Members did not consent to any of Defendants' actions in

5  implementing Fullstory's wiretaps.

6    83.    Unless enjoined, Defendants will continue to commit the illegal acts alleged here.

7  Plaintiffs continue to be at risk because they frequently use the internet to search for information

8  about products or services.  They continue to desire to use the internet for that purpose, including

9  for the purpose of shopping for various diets, weight loss plans, or other health-related products.

10  Defendant FullStory provides its software, including the Session Replay feature, to many other

11  website operators who offer a wide array of services.  For many websites that Plaintiffs may or are

12  likely to visit in the future, they have no practical way to know if their website communications will

13  be monitored or recorded by FullStory.

14    84.    Plaintiffs and Class Members seek all relief available under Cal. Penal Code § 637.2,

15  including injunctive relief and statutory damages of $5,000 per violation.

16                                    **COUNT III**

                        **Invasion Of Privacy Under California's Constitution**

17    85.    Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set

18  forth herein.

19    86.    Plaintiffs bring this claim individually and on behalf of the members of the proposed

20  Class against Defendants.

21    87.    Plaintiffs and Class Members have an interest in: (1) precluding the dissemination

22  and/or misuse of their sensitive, confidential PII and PHI; and (2) making personal decisions and/or

23  conducting personal activities without observation, intrusion or interference, including, but not

24  limited to, the right to visit and interact with various Internet sites without being subjected to

25  wiretaps without Plaintiffs' and Class Members' knowledge or consent.

26

27

28

Formatted: Normal, Indent: Left:  0", Hanging:  0.19",
Space After:  12 pt, Line spacing:  Exactly 12 pt, Border: Top:
(No border)

1    88.    At all relevant times, by implementing FullStory's wiretaps on Noom's Website,

2    each Defendant intentionally invaded Plaintiffs' and Class Members' privacy rights under the

3    California Constitution, and procured the other Defendant to do so.

4    89.    Plaintiffs and Class Members had a reasonable expectation that their PII, PHI, and

5    other data would remain confidential and that Defendants would not install wiretaps on the Website.

6    90.    Plaintiffs and Class Members did not consent to any of Defendants' actions in

7    implementing FullStory's wiretaps on the Website.

8    91.    This invasion of privacy is serious in nature, scope and impact.

9    92.    This invasion of privacy alleged here constitutes an egregious breach of the social

10   norms underlying the privacy right.

11   93.    Plaintiffs and Class Members seek all relief available for invasion of privacy claims

12   under California's Constitution.

13                                    **PRAYER FOR RELIEF**

14           WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek

15   judgment against Defendants, as follows:

16       (a)    For an order certifying the Class under Rule 23 and naming Plaintiffs as

17              the representatives of the Class and Plaintiffs' attorneys as Class Counsel

18              to represent the Class;

19       (b)    For an order declaring that the Defendants' conduct violates the statutes

20              referenced herein;

21       (c)    For an order finding in favor of Plaintiffs and the Class on all counts

22              asserted herein;

23       (d)    For compensatory, punitive, and statutory damages in amounts to be

24              determined by the Court and/or jury;

25       (e)    For prejudgment interest on all amounts awarded;

26       (f)    For injunctive relief as pleaded or as the Court may deem proper; and

27

28

Formatted: Normal, Indent: Left:  0", Hanging:  0.19",
Space After:  12 pt, Line spacing:  Exactly 12 pt, Border: Top:
(No border)

(g)   For an order awarding Plaintiffs and the Class their reasonable attorneys'
fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Plaintiffs demand a trial by jury of all issues so triable.

Dated: December 28, 2020                    Respectfully submitted,

                                            **BURSOR & FISHER, P.A.**

                                            By:   /s/ *Joel D. Smith*
                                                        Joel D. Smith

                                            L. Timothy Fisher (State Bar No. 191626)
                                            Joel D. Smith (State Bar No. 244902)
                                            1990 North California Boulevard, Suite 940
                                            Walnut Creek, CA  94596
                                            Telephone:  (925) 300-4455
                                            Facsimile:  (925) 407-2700
                                            E-Mail: ltfisher@bursor.com
                                                        jsmith@bursor.com

                                            *Attorneys for Plaintiffs*