EMILY JOHNSON HENN (SBN 269482)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: + 1 (650) 632-4700
Facsimile: + 1 (650) 632-4800
Email: ehenn@cov.com

SIMON J. FRANKEL (SBN 171552)
PATRICK R. CAREY (SBN 308623)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
Email: sfrankel@cov.com
Email: pcarey@cov.com

*Attorneys for Defendant FullStory, Inc.*

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUDRA GRAHAM and STACY MOISE, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>NOOM, INC., and FULLSTORY, INC.,<br><br>    Defendants. | Civil Case No.: 3:20-cv-06903-LB<br><br>**REPLY OF DEFENDANT FULLSTORY, INC. IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1), 12(b)(2), AND 12(b)(6)**<br><br>Hearing Date: April 8, 2021<br>Hearing Time: 9:30 a.m.<br>Honorable Laurel Beeler |

## **TABLE OF CONTENTS**

I.  INTRODUCTION ............................................................................................................. 1

II. ARGUMENT ................................................................................................................... 1

    A.  Plaintiffs Have Not Met Their Burden To Show that the Court Has Specific
        Personal Jurisdiction Over FullStory. ........................................................................ 1

        1.  FullStory Did Not Purposefully Direct Its Activities Towards California.  1

            a)  Plaintiffs' Allegations of Wiretapping Do Not Establish that
                FullStory Committed an Intentional Act.......................................... 2

            b)  FullStory's Conduct Was Not Expressly Aimed at California. ....... 2

            c)  Plaintiffs' Allegations Do Not Show FullStory Knew Its
                Actions Were Likely To Cause Harm Felt in California. ............... 3

        2.  Plaintiffs' Claims Do Not Arise Out of Forum-Related Activities *by
            FullStory*. .................................................................................................. 4

        3.  The Exercise of Personal Jurisdiction Over FullStory in California Is Not
            Reasonable. ................................................................................................ 5

    B.  Every Claim in the First Amended Complaint Fails as a Matter of Law. .............. 6

        1.  Plaintiffs Fail To State a Claim Under Section 631................................... 6

            a)  FullStory Did Not Violate Section 631 Because It Was a Party
                to Plaintiffs' Purported Communications. ..................................... 6

            b)  FullStory Did Not Collect the "Contents" of a Communication. ... 9

            c)  The Conduct Alleged Did Not Violate Section 631 Because It
                Was Disclosed in Noom's Privacy Policy. .................................. 11

        2.  Plaintiffs Lack Standing To Assert a Section 635 Claim and Fail To State
            a Claim Under Section 635. ..................................................................... 12

            a)  Plaintiffs Lack a Private Right of Action and Standing To
                Assert a Claim Under Section 635................................................ 12

            b)  FullStory's Code Is Not a Device Primarily or Exclusively
                Designed for Eavesdropping........................................................ 14

        3.  Plaintiffs Do Not State a Claim for Invasion of Privacy Under the
            California Constitution................................................................................ 14

III. CONCLUSION................................................................................................................ 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
    751 F.3d 796 (7th Cir. 2014) ...........................................................................................5, 9

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
    874 F.3d 1064 (9th Cir. 2017) ................................................................................................1

*Bergstein v. Parmar*,
    2014 WL 12586073 (C.D. Cal. June 23, 2014) ...................................................................2, 4

*Boschetto v. Hansing*,
    539 F.3d 1011 (9th Cir. 2008) ..............................................................................................4, 5

*Cohen v. Casper Sleep Inc.*,
    2018 WL 3392877 (S.D.N.Y. July 12, 2018) ......................................................................14

*DirecTV Inc. v. Hart*,
    366 F. Supp. 2d 315 (E.D.N.C. 2004) ...................................................................................14

*DirecTV, Inc. v. Treworgy*,
    373 F.3d 1124 (11th Cir. 2004) .............................................................................................14

*In re Facebook, Inc. Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020) ......................................................................................... *passim*

*Freestream Aircraft (Berm.) Ltd. v. Aero Law Grp.*,
    905 F.3d 597 (9th Cir. 2018) ...................................................................................................4

*Gadda v. State Bar of California*,
    511 F.3d 933 (9th Cir. 2007) ...................................................................................................6

*Goodman v. HTC America, Inc.*
    2012 WL 2412070 (W.D. Wash. June 26, 2016)...................................................................15

*In re Google Inc. Cookie Placement Consumer Privacy Litigation*,
    806 F.3d 125 (3rd Cir. 2015) ................................................................................................15

*Javier v. Assurance IQ, LLC*,
    2021 WL 940319 (N.D. Cal. Mar. 9, 2021).......................................................................9, 12

*Johnson v. U.S. Office of Pers. Mgmt.*,
    783 F.3d 655 (7th Cir. 2015) .................................................................................................13

*In re Lenovo Adware Litig.*,
 2016 WL 6277245 (N.D. Cal. Oct. 27, 2016)............................................................14

*Lopez v. Apple, Inc.*,
 Case No. 4:19-cv-04577, ECF No. 65 (N.D. Cal. Feb. 10, 2021) .............................7

*Luis v. Zang*,
 833 F.3d 619 (6th Cir. 2016) ....................................................................................14

*Mavrix Photo, Inc. v. Brand Technologies, Inc.*,
 647 F.3d 1218 (9th Cir. 2011) ....................................................................................3

*Oakley, Inc. v. Donofrio*,
 2013 WL 12126017 (C.D. Cal. June 14, 2013) ..........................................................3

*Picot v. Weston.*,
 780 F.3d 1206, 1215 (9th Cir. 2015) ..........................................................................5

*Revitch v. New Moosejaw, LLC*,
 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)..............................................8, 10, 13

*Revitch v. New Moosejaw, LLC*,
 Case No. 3:18-cv-06827-VC, Dkt. 47 (N.D. Cal. June 5, 2019) ................................8

*Ribas v. Clark*,
 38 Cal. 3d 355 (1985) ..................................................................................................7

*Rogers v. Ulrich*,
 52 Cal. App. 3d 894 (1975) .......................................................................................11

*Romero v. Securus Techs., Inc.*,
 216 F. Supp. 3d 1078 (S.D. Cal. 2016)......................................................................13

*S.D. v. Hytto Ltd.*,
 2019 WL 8333519 (N.D. Cal. May 15, 2019) ................................................. *passim*

*Schwarzenegger v. Fred Martin Motor Co*,
 374 F.3d 797 (9th Cir. 2004) ..................................................................................5, 6

*Spokeo Inc. v. Robins*,
 136 S. Ct. 1540 (2016).................................................................................................13

*Sprewell v. Golden State Warriors*,
 266 F.3d 979 (9th Cir. 2001) .....................................................................................14

*United States v. Eady*,
 648 F. App'x 188 (3rd Cir. 2016) ................................................................................7

*In re Vizio, Inc., Consumer Privacy Litigation*,
 238 F. Supp. 3d 1204 (C.D. Cal. 2017) .....................................................................15

*Walden v. Fiore*,
   571 U.S. 277 (2014).................................................................................................4

*In re Zynga Privacy Litig.*,
   750 F.3d 1098 (9th Cir. 2014) ...............................................................................10

**Statutes**

18 U.S.C. § 2512(b) .......................................................................................................14

Cal. Penal Code § 631......................................................................................... *passim*

Cal. Penal Code § 632.....................................................................................................13

Cal. Penal Code § 635.................................................................................1, 12, 13, 14

Cal. Penal Code § 636.....................................................................................................13

Cal. Penal Code § 637.2(a) ............................................................................................13

Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510 *et seq.*("Wiretap
   Act")..........................................................................................................................13

**Other Authorities**

Webster's 7th New Collegiate Dictionary (1972) ........................................................11

## I.      INTRODUCTION

Plaintiffs' Opposition repeatedly takes aim at strawman arguments without addressing the arguments FullStory actually makes.  Indeed, Plaintiffs never address how a retail website should be liable for *wiretapping* when it uses software to understand and improve its website's functionality.  For the reasons explained in FullStory's Motion (Dkt. No. 35) ("Mot.") and set forth below, the Court should dismiss Plaintiffs' claims.

*First*, Plaintiffs quibble with the authorities cited in FullStory's personal jurisdiction argument by citing authorities that are clearly distinguishable.  All of the internet-based cases Plaintiffs cite where a court found it had personal jurisdiction over a defendant involved *website operator* defendants.  Plaintiffs cite no case applying a similar outcome to a defendant vendor, like FullStory here, that is only alleged to have supplied software to a website operator.  *Second*, in defending their CIPA claims, Plaintiffs rebut arguments that FullStory did not make.  FullStory argued that it, along with Noom, fit within the well-settled party exception to Section 631, because the context of how FullStory's software is used demonstrates it was itself a party to the communication as an extension of Noom.  Plaintiffs never squarely address this argument and instead conflate it with aiding and abetting liability.  *Third*, Plaintiffs dismiss out of hand FullStory's remaining arguments regarding their Section 635 and invasion of privacy claims, without seriously addressing them.  The Court should dismiss this case in its entirety.

## II.     ARGUMENT

### A.      Plaintiffs Have Not Met Their Burden To Show that the Court Has Specific Personal Jurisdiction Over FullStory.

#### 1.      FullStory Did Not Purposefully Direct Its Activities Towards California.

Contrary to Plaintiffs' lead-off argument, FullStory's Motion did not apply the incorrect test for establishing personal jurisdiction in a tort matter or "jumble[] together" standards.  Dkt. No. 40, Opposition 2 ("Opp.").  As FullStory made clear, "the First Amended Complaint contains no allegations of *purposeful direction* by FullStory."  Mot. 7.  (emphasis added).  To establish purposeful direction, the Ninth Circuit uses the three-part "effects" test.  *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017).  Plaintiffs fail to satisfy a single prong of this test, and instead rely almost entirely on cases dealing with a *website operator's* purposeful direction towards a forum—ignoring that FullStory is not such an operator.  *See* Opp. 3–5.  Looking only at the actions *of FullStory*, as the Court

1

must, Plaintiffs' allegations do not satisfy the "effects" test.

2

### a) Plaintiffs' Allegations of Wiretapping Do Not Establish that FullStory Committed an Intentional Act.

3

4

Plaintiffs' contention that the intentional act element is "easily satisfied" by allegations of

5

wiretapping, is not only wrong, but ignores the "specialized meaning" of "intentional act" in the case on

6

which Plaintiffs rely. Opp. 3 n.2 (citing *Bergstein v. Parmar*, 2014 WL 12586073, at *3 (C.D. Cal. June

7

23, 2014)). According to *Bergstein*, "[t]he Ninth Circuit has held that 'intentional act' has a specialized

8

meaning for the purpose of the first prong of the effects test." *Id.* (citation omitted). "[A]ct" is narrowly

9

defined as "denoting an external manifestation of the actor's will . . . not including any of its results,

10

even the most direct, immediate, and intended," and "intent" is defined as the "intent to perform an

11

actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that

12

act." *Id.* (citations and alternations omitted).

13

As the FAC alleges, FullStory's intentional acts include (i) developing software and (ii)

14

providing its software to Noom through a voluntary partnership. Dkt. No. 27, FAC ¶¶ 17, 35–36. Thus,

15

the "external manifestation of [FullStory's] will" was to provide software to a client. *See Bergstein*,

16

2014 WL 12586073, at *3 (citations omitted). There is no suggestion, let alone allegation, that this

17

external manifestation was to wiretap an individual in this forum or even enable Noom to do so.

18

Plaintiffs argue that the FAC sufficiently alleges intent to wiretap by FullStory, Opp. 3, but these

19

conclusory statements are unsupported by any facts. Rather, the actual facts of the FAC allege that

20

FullStory provides Software-as-a-Service ("SaaS")to its clients, that *Noom* installed this software on its

21

website, and that "Noom utilizes FullStory's software on the Website." FAC ¶¶ 11, 26, 35–37. None of

22

these facts support the allegation that *FullStory* intentionally wiretapped Plaintiffs' communications.

23

And Plaintiffs cannot use the "results, even the most direct, immediate, and intended" results of the

24

original intent, to satisfy this prong. *See Bergstein*, 2014 WL 12586073, at *3 (citations omitted).

### b) FullStory's Conduct Was Not Expressly Aimed at California.

25

Plaintiffs also have not alleged sufficient facts to show that FullStory expressly aimed its conduct

26

*at California*. In each internet-based case Plaintiffs cite on this point, the Court addressed whether *a*

27

*website operator*, not a vendor to the website operator, was subject to personal jurisdiction. For

28

example, Plaintiffs cite *Oakley, Inc. v. Donofrio*, Opp. 5, where the court found a retailer aimed its business towards California because it "conducted regular business with California customers," "engage[d] in a substantial volume of transactions," and "actively and affirmatively" transacted with California customers.  2013 WL 12126017, at *5–6 (C.D. Cal. June 14, 2013).  Plaintiffs have not alleged any similar facts here as to FullStory.  The FAC alleges merely that because of California's large market, Californians must "form a significant portion of Noom's customer base."  FAC ¶ 15.  This shows nothing about whether *FullStory* has "actively and affirmatively" transacted with California customers or "conducted regular business" with Californians.  *See Oakley*, 2013 WL 12126017, at *5–6.

FullStory's only commercial activity that Plaintiffs affirmatively allege in the FAC is "entering into voluntary partnerships with various companies," one of which is Noom.  FAC ¶¶ 35–36.  Without more, it's impossible to tell where that activity was directed, and there is no hint it was directed at California.  *See id.* ¶ 6 (Noom resides in New York and Delaware).  Facts about Noom's website and where it may or may not be directed, which are the only allegations Plaintiffs rely on, are not relevant to whether FullStory expressly aimed its conduct towards California.  *See* Opp. 5; FAC ¶ 15.  And even if these allegations did show FullStory knew some of Noom's customers were in California, that still does not show FullStory aimed its activities at California because it was *Noom* that installed FullStory's software on its website.  *See* FAC ¶¶ 26, 37.

### c)   Plaintiffs' Allegations Do Not Show FullStory Knew Its Actions Were Likely To Cause Harm Felt in California.

Plaintiffs again rely on inapposite cases involving website operators, not their vendors, to attempt to show that FullStory knew that the alleged harm from its actions would be felt in California.  Unlike the defendant in *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218 (9th Cir. 2011), FullStory does not "appeal[] to, and profit[] from, an audience in a particular state."  *Id* at 1231.  Where Noom's customers are makes no difference to FullStory.  Even if Plaintiffs are correct that FullStory "constructively" knew that some of Noom's customers were based in California because of the sheer size of the state's population, that does not show *FullStory* "anticipated, desired, and achieved a substantial California [customer] base" by entering into a Software-as-a-Service contract with Noom.  *Id.* at 1230.  Absent an explanation of why FullStory should have known or considered the location of

Noom's customers when providing its marketing analytics software to Noom, Plaintiffs' allegations do not satisfy the third element of the effects test.

Plaintiffs' wiretapping cases also do not establish FullStory knew its actions were likely to be felt in California, because unlike in *Hytto* and *Bergstein*, FullStory's intentional act was not to wiretap. In *Bergstein* the court found that the defendant's intentional act was allegedly recording a telephone conversation, 2014 WL 12586073, at *3, and in *Hytto* the intentional act was the alleged interception of communications between app users. *S.D. v. Hytto Ltd.,* 2019 WL 8333519, at *4 (N.D. Cal. May 15, 2019). But as explained above, using the test described in *Bergstein*, the facts alleged in the FAC do not support any inference that FullStory intentionally wiretapped. Plaintiffs make much of FullStory's supposed "concession" that purposeful direction can be found where conduct outside the forum has effects inside the forum. *See* Opp. 3–4. But as Plaintiff's own authority makes clear, it is the effects test that determines whether such out of forum conduct is sufficient for establishing jurisdiction. *See Freestream Aircraft (Berm.) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 604 (9th Cir. 2018). And as explained above, Plaintiffs have not satisfied this test (Section II.A.1(a)-(c) *supra*) and therefore have failed FullStory's out-of-forum purposefully directed its out-of-forum actions towards California.

### 2.    Plaintiffs' Claims Do Not Arise Out of Forum-Related Activities *by FullStory*.

Plaintiffs also fail to show that this suit "arise[s] out of contacts that [FullStory] create[d] with the forum State," as required by the Supreme Court. *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (citation omitted). Although the *Walden* Court declined to directly address the issue of "virtual contacts" made over the internet, *see id.* at 290 n.9, *Walden* still stands for the principle that "the unilateral activity of a plaintiff" does not establish the contacts necessary for the exercise of personal jurisdiction. *Id.* at 286 (citation omitted). From FullStory's perspective, the fact that Plaintiffs were in California when they accessed Noom.com is "random" and cannot support personal jurisdiction. *See id.*

Plaintiffs continue to emphasize the alleged wiretapping in drawing the connection between FullStory and California, but as explained above, FullStory's alleged intentional act was not wiretapping, it was providing software to its client Noom. *See* FAC ¶¶ 35–37. Unlike in *Hytto*, where the app owner and operator itself was the defendant accused of wiretapping, FullStory is not the operator of Noom.com. 2019 WL 8333519. Rather, as in *Boschetto v. Hansing*, this was a "one-time contract"

for FullStory that involves California "only because that is where [Plaintiffs] happened to reside."  539 F.3d 1011, 1019 (9th Cir. 2008).  Installation of FullStory's software on Noom.com was accomplished "without entering California, contacting any person in California, or otherwise reaching out to California" just like the alleged tortious contact in *Picot v. Weston*.  *See* 780 F.3d 1206, 1215 (9th Cir. 2015).  Furthermore, *Hytto* involved a foreign defendant and only required a showing that the defendant knew its conduct would reach the US as a whole, 2019 WL 8333519, at *3, a lesser burden than showing activity directed at a specific state.  Plaintiffs have not alleged any forum-related conduct by FullStory related to this suit.

### 3.      The Exercise of Personal Jurisdiction Over FullStory in California Is Not Reasonable.

The Court need not consider this prong because Plaintiffs have failed to meet their burden to establish the first two prongs of the specific personal jurisdiction test.  *See Schwarzenegger v. Fred Martin Motor Co*, 374 F.3d 797, 802 (9th Cir. 2004).  If the Court were to reach this prong, however, it should find the exercise of personal jurisdiction over FullStory unreasonable.

Courts recognize that finding personal jurisdiction over websites in every forum where they may be accessed is unreasonable.  *See, e.g.*, *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014) ("Having an 'interactive website' . . . should not open a defendant up to personal jurisdiction in every spot on the planet where that interactive website is accessible.  To hold otherwise would offend traditional notions of fair play and substantial justice.") (citation omitted).  This hesitation should apply even more strongly where Plaintiffs are asking to assert personal jurisdiction over a vendor that supported the website, and not the website itself.

Plaintiffs fault FullStory for not addressing each of the Ninth Circuit's seven factors on this issue.  But those factors confirm unreasonableness here: (1) the lack of FullStory's purposeful injection is set out above and in FullStory's Motion; (2) it is burdensome for FullStory, a Georgia company with no direct ties to California, to defend here; (3) there is no claim FullStory violated the laws of its own state from its own state; (4) California has no particular interest in regulating FullStory in Georgia; (5) there are no particular judicial efficiencies here; (6) this district is not critical to Plaintiffs' relief (their counsel has brought similar suits in every district in the State); and (7) Plaintiffs' counsel could pursue

FullStory in Georgia.  Despite Plaintiffs' claims otherwise, Opp. 9, FullStory has "present[ed] a compelling case that the exercise of jurisdiction would not be reasonable" because FullStory did not direct its activities towards California and California has no special interest in adjudicating this case.[1] *See Schwarzenegger*, 374 F.3d at 802.  Therefore, FullStory should be dismissed from this suit entirely.

### B.   Every Claim in the First Amended Complaint Fails as a Matter of Law.

#### 1.   Plaintiffs Fail To State a Claim Under Section 631.

##### a)   FullStory Did Not Violate Section 631 Because It Was a Party to Plaintiffs' Purported Communications.

FullStory's Motion demonstrated that neither Noom nor FullStory could be liable for eavesdropping under Section 631 because both Defendants were a party to Plaintiffs' purported communications and thus fit within the well-recognized party exception to Section 631.  Mot. 10–13.  In opposition, Plaintiffs do not contest that Noom was a party, but instead attempt to argue that FullStory cannot be considered a party.  Each of Plaintiffs' arguments falls short of undermining FullStory's argument that, properly understood in the context of the technology, and based on Plaintiffs' own allegations, FullStory was not a third party but instead an extension of Noom.  *Id.* 2, 10–13.

*First*, Plaintiffs assert that FullStory cannot be considered a party to the communication because that "contradict[s] the pleadings."  Opp. 10.  Not so.  Plaintiffs allege that FullStory offers SaaS that allows website operators such as Noom to obtain and view through FullStory's dashboard certain information regarding how users are interacting with their website.  FAC ¶¶ 11, 25.  FullStory's entire argument is based on Plaintiffs' own allegations, and Plaintiffs nowhere allege that FullStory intercepts any information for its own benefit or use.  Mot. 10–13.  Plaintiffs argue the *Hytto* court rejected the same argument FullStory advances here, but that is incorrect.  Opp. 10.  *Hytto* did not involve an entity that was collecting information to provide it to a party to the communication.  *Hytto*, 2019 WL 8333519, at *7–8.  The "communication" at issue in *Hytto* was between two individuals: Person A, after giving a vibrator to Person B, could control the vibrator using an app.  *Id*.  The court held that the communication

---

[1] The Opposition asserts FullStory was required in its Motion to analyze the Ninth Circuit's seven-factor test for reasonableness and cannot now do so on reply.  Opp. 8–9.  Plaintiffs miss the distinction between making a new argument in reply (as in *Gadda v. State Bar of California*, 511 F.3d 933, 937 n.2 (9th Cir. 2007)) and offering new reasons in support of an existing argument.

was thus between Person A and Person B.  Defendant Hytto, unlike FullStory, was not deployed by one

of these two persons.  Rather, Hytto captured information on its servers for its own purposes.  *Id*.  If, in

contrast, the defendant in *Hytto* had been collecting this information at the behest of Person A or Person

B, and displaying that information to one of the users rather than for its own use, it would be analogous

to the facts here, but that is not what Plaintiffs alleged.

Plaintiffs reliance on *United States v. Eady*, 648 F. App'x 188, 192 (3rd Cir. 2016), and *Lopez v.

Apple, Inc.*, Case No. 4:19-cv-04577, ECF No. 65, at 8 (N.D. Cal. Feb. 10, 2021), is similarly misplaced.

*See* Opp. 10.  *Eady* did not examine the technological context of a communication in applying the party

exception to modern technologies, but instead considered whether jury instructions were appropriate in a

case where a defendant tricked individuals into thinking they were calling each other but in fact the

defendant initiated the calls and remained on the line to secretly listen and then use that information

against these individuals.  *Eady*, 648 F. App'x at 190.  *Apple* is similarly inapposite as Plaintiffs' own

quotation makes clear that the court was not addressing the party exception.  *See* Opp. 10 (citing *Apple*,

Case No. 4:19-cv-04577, ECF No. 65, at 8).

*Second*, Plaintiffs confusingly seem to argue that FullStory cannot be considered a party because

Section 631(a) "imposes liability for '*any person*' who 'aids, agrees with, employs, or conspires with'

anyone who violates § 631(a)."  Opp. 10–11 (citing Cal. Penal Code § 631(a)) (emphasis in Opposition).

This conflates the party exception with aiding and abetting liability under the statute and has nothing to

do with whether FullStory should be considered a party to Plaintiffs' communications.

FullStory's party exception argument is that there is no liability for either party here because

both Noom and FullStory were parties to the communication.  Mot. 10–13.  Whether aiding or abetting

liability could exist under the statute for either Defendant (and FullStory disagrees that it could in this

situation) is a separate question and has nothing to do with whether FullStory should be considered a

party to the communication.  Thus, Plaintiffs' argument about aiding and abetting is inapposite as it is

premised on the existence of *third parties* to the communication.  *See* Opp. 11 ("Allow[ing] third

persons to eavesdrop on conversations via extensions would be a clear contradiction of the intent of

section 631(a)") (citing *Ribas v. Clark*, 38 Cal. 3d 355, 363 (1985)); ("the intent of wiretap laws is to

'prevent the acquisition of the contents of a message by an unauthorized third-party . . . .'" (citing *In re*

*Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607–08 (9th Cir. 2020) ("*Facebook III*").  Finally, Plaintiffs are wrong that finding FullStory is a party here would eviscerate aiding or abetting liability. *See* Opp. 11.  Such liability could exist in the face of actual non-parties aiding and abetting wiretapping.

Plaintiffs nowhere argue that the party exception does not exist, nor do they dispute that it is an absolute defense to their allegations if the Court finds that both FullStory and Noom were parties to the communication.  Plaintiffs cited cases also fail to show that FullStory was *not* a party.  As *Facebook III* made clear, in evaluating who parties to a communication are, courts should look to the "technical context" of the technology at issue to determine the parties to that communication.  *Facebook III*, 956 F.3d at 607.  The technical context of *Facebook III*, where the court held Facebook was not a party to the communication, is very different than the technical context alleged here.  *See id.* at 596.  There, Facebook allegedly used plug-ins to track users' browsing to third party websites, even while they were not signed into Facebook.  *Id.*  This tracking was unrelated to the support or function of the websites containing the plug-ins.  *Id*.  Facebook then sold these browsing histories to advertisers.  *Id.*  Unlike Facebook, which learned of and sold users' browsing history, FullStory's software, deployed by Noom for Noom's own purposes, is not an independent party learning of and using information from the communication between Noom and Plaintiffs.  *See* Mot. 11–12; FAC ¶¶ 11, 37–39.  Plaintiffs' assertion that the Ninth Circuit's instruction to look at the "technical context" is nothing more than a "cherry-picked" quote is belied by the fact that the *Facebook III* court not only stated that the party exception must be evaluated in the technical context at issue, but also spent significant space discussing how the technology at issue worked.  *Facebook III*, 956 F.3d at 607–08.

Likewise, in *Moosejaw*, the technical context of that case was different.  There, the defendant alleged NaviStone, the software-provider defendant, "scan[ned] [plaintiff's] computer for files revealing his identity" when he visited the Moosejaw website and then used this data for direct mailer advertisements.  *See Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *1 (N.D. Cal. Oct. 23, 2019); *Revitch v. New Moosejaw, LLC*, Case No. 3:18-cv-06827-VC, Dkt. 47 at 2–3 (N.D. Cal. June 5, 2019).  This "scanning" was unrelated to any website functionality of NaviStone's customer.

*Third*, Plaintiffs are incorrect that FullStory's cited cases do not support its party exception argument.  Plaintiffs take the tautological position that those cases do not apply here because they did

not involve third parties, only recording devices.  But FullStory's argument is that it is not a third party and is instead the modern-day equivalent of the recording devices in those cases.  Indeed, just this month, another court in this district rejected Plaintiffs' argument in a CIPA case brought by Plaintiffs' counsel.  In *Javier v. Assurance IQ, LLC*, the court analyzed allegations very similar to this case and held that the defendant's website software could not be considered a third party because the plaintiff alleged that the website operator "collects the information by pasting [the software provider's] javascript into its form page" and did not allege that the software provider itself was recording or receiving the data.  2021 WL 940319, at *4 n.5 (N.D. Cal. Mar. 9, 2021).  Here Plaintiffs allege that Noom enlisted the help of FullStory and installed FullStory's software on its website and for its own purposes.

Plaintiffs' remaining argument—that it does not matter if FullStory sold, disclosed, or otherwise used Plaintiffs' data because that is "not a required element" to establish Section 631 liability—is meritless.  Opp. 12.  As explained in the Motion and immediately above, this Court must examine modern technologies such as FullStory's in context when determining how the party exception applies.  *Facebook III*, 956 F.3d at 607–08.  The absence of any allegations that *FullStory*, rather than Noom, accessed or used the data that was allegedly collected about Plaintiffs' website visits reinforces that, in the context of this technology, FullStory cannot be considered a third party but rather a vendor that assists the website operator by providing SaaS to allow the website operator to perform analytics.  In that context, FullStory's SaaS product is in service to Noom, the intended party with whom Plaintiffs deliberately communicated, and FullStory steps into Noom's shoes as a party to the communication.

*Fourth*, FullStory's Motion demonstrates that Plaintiffs' theory of the case would criminalize basic internet functionality.  Mot. 12–13.  Plaintiffs' only response is to call this "hyperbole."  Opp. 13.  But it's not.  Under Plaintiffs' theory, any software supplier who was not the website operator, including Google in the search box example, would be liable for eavesdropping if its servers received data along with the website owner.  *See* Mot. 12.  This stretches CIPA too far.  The Court should dismiss Count 1.

        **b)**        **FullStory Did Not Collect the "Contents" of a Communication.**

Based on settled Ninth Circuit precedent, FullStory's Motion demonstrated that there can be no eavesdropping under Section 631 to the extent Plaintiffs base their claims on allegations that FullStory collected information that is not the "contents" of their communications.  Mot. 13.  In response,

Plaintiffs attempt to shift the Court's focus to arguments FullStory did not make and away from the fact that they do not actually allege that they ever provided any of the information they claim can be considered the content of their communications.  Opp. 13–15.

First, Plaintiffs rely on *Moosejaw* to argue that all of their keystrokes and mouse clicks are communications.  Opp. 13 (citing *Moosejaw*, 2019 WL 5485330, at *1).  But *Moosejaw* did not address whether the defendants there had intercepted *the contents* of a communication.  Rather, the court addressed whether mouse clicks and keystrokes could be communications at all.  *Id.*  The content/non-content distinction was not at issue, and the court never discussed it.  *See id.*

Second, as FullStory explained in its Motion, the proper question in the CIPA context is whether a third-party is alleged to have collected *the contents* of a communication.  Mot. 13.  The parties do not appear to meaningfully disagree on this point or as to what constitutes the contents of a communication.  Plaintiffs themselves acknowledge that whether something is the "contents" of a communication for purposes of CIPA turns in part on whether something is "record information," which is "typically data generated automatically at the sending of the message and is incidental to the use of the communication device," rather than contents, which "is generated . . . through the intent of the user."  Opp. 15 (emphasis omitted) (quoting *Hytto*, 2019 WL 8333519, at *6); *see also In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014) (contents are "the intended message conveyed by the communication.").

But Plaintiffs never allege that they communicated to FullStory or Noom any of the information that they argue counts as the contents of a communication.  In particular, while Plaintiffs allege that FullStory "captured the date and time of the visits, the duration of the visits, Plaintiffs' IP addresses, their locations at the time of the visits, their browser types, and the operating system on their devices" (FAC ¶¶ 43, 46) their Opposition seems to admit this is non-content information and shifts to arguing that browsing histories and information communicated to defendants in fillable forms, such as names and addresses, qualifies as the contents of a communication.  Opp. 14-15.  Tellingly, Plaintiffs' argument in their Opposition on this point contains *no citations to the FAC*, nor any statement that they communicated their names or addresses to Noom when they allegedly visited the site.  While the FAC lists information that Noom asks visitors for, *in general*, neither Plaintiff alleges that she input any of this information into any of the fillable boxes described in the FAC.  FAC ¶ 46.  The most Plaintiffs can

muster is that "[i]t is common experience that website users provide information when purchasing items on the Internet."  Opp. 15.  But Plaintiffs nowhere allege what their purported "browsing" entailed or that they actually purchased anything.  Without well-pled allegations of what they did when visiting the website, there is no support in the FAC to suggest that Plaintiffs' "keystrokes" and "mouse clicks" amounted to contents of a communication.

Finally, Plaintiff's reliance on *Facebook III* is misplaced.  The Ninth Circuit there only addressed the party exception and explicitly noted that it was not addressing other elements of a CIPA claim, such as whether a non-party intercepted the contents of a communication.  *See Facebook III*, 956 F.3d at 608 ("We do not opine whether the Plaintiffs adequately pleaded the other requisite elements of [a CIPA claim], as those issues are not presented on appeal.").  And while Plaintiffs cite *Facebook III* for the proposition that a user's *browsing history* can constitute the contents of a communication that quotation comes from the portion of *In re Facebook* addressing whether a reasonable expectation of privacy can exist in browsing history, not whether such information constitutes "contents" under CIPA.  *See* Opp. 14.  Accordingly, the Court should dismiss Count 1 to the extent Plaintiffs base their claim on data that is not the contents of a communication and to the extent they do not allege that they themselves ever input any information on Noom's website.

> c)   **The Conduct Alleged Did Not Violate Section 631 Because It Was Disclosed in Noom's Privacy Policy.**

Plaintiffs' Section 631 claim rests on the allegation that FullStory surreptitiously recorded how they interacted with Noom.com.  But there was nothing surreptitious about Defendants' actions:  Noom transparently informs users that Noom *and its service providers* collect usage information regarding users' interactions with Noom.com.  Mot. 14–15.

As FullStory made clear in its motion, CIPA imposes liability for eavesdropping, which is defined as "to listen secretly to what is said in private."  *See* Webster's 7th New Collegiate Dictionary (1972); *see also Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (1975) (citation omitted); Mot. 14–15. Plaintiffs cannot state a claim because they have failed to plausibly allege that FullStory eavesdropped on their communications—which requires showing that FullStory listened *secretly* to what was said in private.  Noom's privacy policy establishes that neither Noom nor FullStory acted in secret.  Plaintiffs

do not meaningfully engage with this straightforward point, but instead label it an "extreme position" before dismissing it out of hand.  Opp. 16.  Notably, they cite no authority in support of this proposition—nor do they even attempt to argue that they can state a claim under CIPA if the complained-of data collection was not surreptitious.

Instead, in response, Plaintiffs argue they could not have *consented* to Defendants' actions because (1) the alleged wiretap began the moment they landed on Noom's website, (2) they did not affirmatively manifest assent, and (3) the privacy policy did not disclose the full scope of FullStory's actions.  *Id.*  But FullStory did not argue in its Motion that Plaintiffs consented under traditional principles of consent (though FullStory expressly reserves the right to make such argument at a later time).  As explained above, FullStory's point was that Plaintiffs are required to demonstrate Defendants' actions were somehow surreptitious, something they cannot do in the face of Noom's privacy policy.

Plaintiffs are also wrong that retroactive consent is invalid and that Noom's privacy policy did not disclose the full scope of FullStory's actions.  As to Plaintiffs' retroactive consent argument, that same argument was just rejected by another court in this District.  *See Javier*, 2021 WL 940319, at *3 (finding plaintiffs had consented to a website's use of software similar to FullStory's because "California courts frequently uphold retroactive consent as valid.").  In addition, that same court held that plaintiffs' attempts there to nitpick the terms of the privacy policy were "largely irrelevant" because the privacy policy indicated that the website-operator defendant disclosed that it "tracks activity on its website" and uses vendors to do so.  *See id.* at *4.  Here, Noom's privacy policy fully discloses the complained of actions, stating that Noom and its service providers "automatically (or passively) store or collect certain information whenever User visits or interacts with the Website ("**Usage Information**"), and that this usage information is collected "using a variety of technologies."  Zhang Decl., Ex. A at 3. With such public disclosures, Defendants' alleged actions cannot plausibly be deemed surreptitious and therefore do not amount to a violation of CIPA.

2.    **Plaintiffs Lack Standing To Assert a Section 635 Claim and Fail To State a Claim Under Section 635.**

a)    **Plaintiffs Lack a Private Right of Action and Standing To Assert a Claim Under Section 635.**

FullStory's Motion demonstrated that Plaintiffs lack a private right of action to assert their

1
2
3
4
5
6

Section 635 claims.  CIPA's private right of action in the civil context extends to only those who have been injured as a result of a violation of a specific section: those who have "been injured by a violation of this chapter may bring an action against the person who committed the violation." Mot. 15–17 (citing Cal. Penal Code § 637.2(a)).  And FullStory established that Plaintiffs lacked Article III standing to bring their Section 635 claim because they did not suffer any particularized harm in relation to a purported violation *of that Section*.  Mot. 16–17.

7
8
9
10
11
12

Plaintiffs again ignore the thrust of FullStory's arguments.  Instead, they argue that CIPA's private right of action expressly states that they need not show they have "suffered, or been threatened with actual *damages*." Opp. 21 (emphasis added).  This misses the point.  FullStory did not argue that Plaintiffs were required to show damages; FullStory argued that Plaintiffs could not show an *injury* sufficient to support a private right of action claim under Section 635 based on an injury they allegedly suffered as a result of a violation of Section 631.

13
14
15
16
17
18
19
20
21

Similarly, as to Article III standing, Plaintiffs "must show that [they] . . . suffered an invasion of a legally protected interest that is concrete and particularized" from the alleged violation.  *Spokeo Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (citation omitted).  Plaintiffs again rely on their separate purported injury allegedly suffered in connection with their Section 631 claim to argue they suffered an injury to support a claim under Section 635.  Plaintiffs' allegations are insufficient to show standing for a Section 635 claim because "the fact that a plaintiff has suffered an injury that is traceable to one kind of conduct does not grant that plaintiff standing to challenge other, even related, conduct." *Johnson v. U.S. Office of Pers. Mgmt.*, 783 F.3d 655, 661 (7th Cir. 2015) (no standing where alleged harm created by a different section of a statute than the one plaintiff was challenging).

22
23
24
25
26
27
28

Plaintiffs' cited cases are not at odds with FullStory's argument.  Those cases deal with whether plaintiffs bringing claims for *other sections* of CIPA that prohibit eavesdropping had standing when they alleged nothing more than defendants had eavesdropped on their communications.  *See* Opp. 22 (citing *Facebook III*, 956 F.3d at 597; *Romero v. Securus Techs., Inc.*, 216 F. Supp. 3d 1078, 1088 (S.D. Cal. 2016)).  But Section 635 prohibits certain actions involving the production and sale of eavesdropping devices, and Plaintiffs have not alleged a specific injury tied to those actions.  And while the court in *Moosejaw* did find that the plaintiff there had standing to bring a Section 635 claim, the order does not

address the distinction and argument FullStory is making here.  *Moosejaw*, 2019 WL 5485330 at *1. Finally, while Plaintiffs point to a Sixth Circuit case that held a plaintiff could avail himself of the private right of action in the federal Wiretap Act to bring a claim over defendant's possession of a wiretap device under the federal law, that court nowhere addresses *standing*.  Opp. 22.  *See Luis v. Zang*, 833 F.3d 619 (6th Cir. 2016).[2]

> **b)** **FullStory's Code Is Not a Device Primarily or Exclusively Designed for Eavesdropping.**

As shown in the Motion, FullStory's software is not "a device" that is "primarily or exclusively designed or intended for eavesdropping."  Mot. 17–18.  Plaintiffs offer little in response other than to assert this is a question of fact that cannot be decided now.  This ignores not only dictionary definitions FullStory cites, but also the cases holding that threadbare allegations such as Plaintiffs' description of a "snippet of code" are insufficient to plausibly allege software is a device.  *See* Mot. 17–18.

The same is true of Plaintiffs' argument whether FullStory's software is "primarily or exclusively" used for wiretapping requires a factual record.  Opp. 23–24.  There is no need for a factual record when Plaintiffs' own allegations, such as their allegation that FullStory's code is used to help businesses improve their websites, demonstrate the software *is not* primarily or exclusively used for eavesdropping.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (a plaintiff can plead facts dooming its own argument "by including . . . details contrary to his claims").  Plaintiffs' unclear argument concerning motive and intention does not alter this either.  *See* Opp. 24.

> **3.** **Plaintiffs Do Not State a Claim for Invasion of Privacy Under the California Constitution.**

Plaintiffs' allegations fail to state a claim for invasion of privacy under the California Constitution as they do not plausibly suggest Plaintiffs had a reasonable expectation of privacy in the mouse clicks and keystrokes allegedly provided to Noom, and FullStory's alleged actions come nowhere

---

[2] Plaintiffs do not argue that *Luis* supports their argument that they have alleged facts showing they have a private right of action under Section 635, perhaps because courts dealing with the Federal Wiretap Act's analogous section find plaintiffs lack a private right of action for those claims.  *See, e.g.*, *DirecTV, Inc. v. Treworgy*, 373 F.3d 1124, 1129 (11th Cir. 2004); *Cohen v. Casper Sleep Inc.*, 2018 WL 3392877, at *5 (S.D.N.Y. July 12, 2018); *In re Lenovo Adware Litig.*, 2016 WL 6277245, at *7 (N.D. Cal. Oct. 27, 2016); *DirecTV Inc. v. Hart*, 366 F. Supp. 2d 315, 323 (E.D.N.C. 2004) (citing cases) (all finding no private right of action under the analogous 18 U.S.C. § 2512(b)).

close to constituting an egregious breach of social norms.  Mot. 18–20.  Plaintiffs argue in opposition that they have satisfied these elements because "FullStory's technology far exceeds user expectations" and whether FullStory's actions are an "egregious breach of social norms" should not be resolved at the pleading stage.  Opp. 24–25.  This is incorrect.

*First*, Plaintiffs' assertion that FullStory's alleged actions "exceed[] user expectations" does not explain why a Noom.com user would have a reasonable expectation of privacy in the very information he or she was attempting to share with the website.  Regardless of what information FullStory collected, the FAC establishes it collected the information for Noom's use; Noom, of course, was the intended recipient of Plaintiffs' communications.  *See* FAC ¶¶ 25, 29, 38.

*Second*, Plaintiffs have failed to allege facts demonstrating that FullStory's actions could constitute an egregious breach of social norms.  Plaintiffs' cited cases do not show otherwise.  For example, in *In re Google Inc. Cookie Placement Consumer Privacy Litigation*, the court emphasized it was Google's overriding of plaintiffs' cookie blockers while simultaneously claiming to give users the ability to refuse cookies that was egregious.  806 F.3d 125, 150–51 (3rd Cir. 2015).  Similarly, in *In re Vizio, Inc., Consumer Privacy Litigation*, the court's finding that plaintiffs had plausibly stated that Vizio's actions were an egregious breach was tethered to the facts that (1) Vizio "disregard[ed] consumers' privacy choices while simultaneously holding itself out as respecting them" and (2) Vizio sold this data to advertisers.  238 F. Supp. 3d 1204, 1233 (C.D. Cal. 2017) (citations omitted).  And in *Goodman v. HTC America, Inc.*, the court considered not only the facts that the apps were continuously tracking the plaintiffs' location, but also that defendants were compiling profiles on app users and sharing these with third parties to find that plaintiffs had plausibly alleged an egregious breach of social norms.  2012 WL 2412070, at *15 (W.D. Wash. June 26, 2016).  As explained above, FullStory acted consistently with Noom's published privacy policy, and *only* provided it to Noom.

*Third*, while Plaintiffs argue that this claim should not be resolved at the pleading stage, that argument overlooks the numerous cases FullStory cited in its Motion that resolved these questions *at the pleading stage*.  *See* Mot. 20 (citing cases).

## III.   CONCLUSION

For these reasons, this Court should dismiss Plaintiffs' First Amended Complaint with prejudice.

DATED: March 19, 2021                    COVINGTON & BURLING LLP

                                         By:  */s/ Emily Johnson Henn*

                                              EMILY JOHNSON HENN (SBN 269482)
                                              COVINGTON & BURLING LLP
                                              3000 El Camino Real
                                              5 Palo Alto Square, 10th Floor
                                              Palo Alto, CA 94306-2112
                                              Telephone: + 1 (650) 632-4700
                                              Facsimile: + 1 (650) 632-4800
                                              Email: ehenn@cov.com

                                              SIMON J. FRANKEL (SBN 171552)
                                              PATRICK R. CAREY (SBN 308623)
                                              COVINGTON & BURLING LLP
                                              Salesforce Tower
                                              415 Mission Street, Suite 5400
                                              San Francisco, CA 94105-2533
                                              Telephone: + 1 (415) 591-6000
                                              Facsimile: + 1 (415) 591-6091
                                              Email: sfrankel@cov.com
                                              Email: pcarey@cov.com

                                              *Attorneys for Defendant FullStory, Inc.*