EMILY JOHNSON HENN (SBN 269482)
ehenn@cov.com
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: + 1 (650) 632-4700
Facsimile: + 1 (650) 632-4800

SIMON J. FRANKEL (SBN 171552)
sfrankel@cov.com
MATTHEW Q. VERDIN (SBN 306713)
mverdin@cov.com
JENNA L. ZHANG (SBN 336105)
jzhang@cov.com
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091

*Attorneys for Defendant
FullStory, Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUDRA GRAHAM and STACY MOISE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NOOM, INC., and FULLSTORY, INC.,<br><br>Defendants. | Civil Case No.: 3:20-cv-06903-LB<br><br>**DEFENDANT FULLSTORY, INC.'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1), 12(b)(2), AND 12(b)(6)**<br><br>Hearing Date: July 29, 2021<br>Hearing Time: 9:30 a.m.<br><br>Honorable Laurel Beeler |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION TO DISMISS ................................................................. 1

STATEMENT OF RELIEF SOUGHT ............................................................................................ 1

STATEMENT OF ISSUES TO BE DECIDED ............................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES .................................................................. 2

I. INTRODUCTION ................................................................................................................ 2

II. BACKGROUND .................................................................................................................. 3

III. ARGUMENT ........................................................................................................................ 4

    A. The Second Amended Complaint Fails to State a Claim. ........................................ 5

        1. Plaintiffs Fail to State an Eavesdropping Claim Under Section 631(a)...... 5

            a) FullStory Was Not a Third-Party Eavesdropper on Plaintiffs' Communications with Noom. ........................................................... 5

            b) The Eavesdropping Claim Fails to the Extent It Is Predicated on Non-Content Information. ............................................................. 8

            c) Noom's Privacy Policy Forecloses Plaintiffs' Claims. .................... 9

        2. Plaintiffs Lack Standing to Pursue—and Fail to State—a Claim for the Sale of Eavesdropping Software Under Section 635(a). .......................... 10

        3. Plaintiffs Fail to State an Invasion of Privacy Claim Under the California Constitution. .............................................................................................. 12

        4. Plaintiff Moise Lacks Standing To Bring a Claim for Injunctive Relief.. 13

    B. FullStory Is Not Subject to Personal Jurisdiction In California. ........................... 14

IV. CONCLUSION ................................................................................................................... 16

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................................... 8

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
  874 F.3d 1064 (9th Cir. 2017) ................................................................................................. 14

*Brodsky v. Apple Inc.*,
  445 F. Supp. 3d 110 (N.D. Cal. 2020) ....................................................................................... 5

*Clapper v. Amnesty Intern. USA*,
  568 U.S. 398 (2013) ................................................................................................................. 13

*Cohen v. Casper Sleep Inc.*,
  2018 WL 3392877 (S.D.N.Y. July 12, 2018) .......................................................................... 11

*CollegeSource, Inc. v. AcademyOne, Inc.*,
  653 F.3d 1066 (9th Cir. 2011) ................................................................................................. 16

*Daniels-Hall v. Nat'l Educ. Ass'n*,
  629 F.3d 992 (9th Cir. 2010) ................................................................................................ 3, 4

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020) ..................................................................................... 5, 7, 9, 12

*In re Facebook Internet Tracking Litig.*,
  140 F. Supp. 3d 922 (N.D. Cal. 2015) ..................................................................................... 11

*In re Facebook Internet Tracking Litig.*,
  263 F. Supp. 3d 836 (N.D. Cal. 2017) ................................................................................ 12, 13

*Graham v. Noom, Inc.*,
  2021 WL 1312765 (N.D. Cal. Apr. 8, 2021) ..................................................................... passim

*J. Edwards Jewelry Distrib., LLC. v. Wells Fargo & Co.*,
  2019 WL 2329248 (N.D. Cal. May 31, 2019) ......................................................................... 12

*Low v. LinkedIn Corp.*,
  900 F. Supp. 2d 1010 (N.D. Cal. 2012) ................................................................................... 13

*LVRC Holdings LLC v. Brekka*,
  581 F.3d 1127 (9th Cir. 2009) ................................................................................................. 12

*Membrila v. Receivables Performance Mgmt., LLC*,
  2010 WL 1407274 (S.D. Cal. Apr. 6, 2010) .............................................................................. 6

*Picot v. Weston*,
    780 F.3d 1206 (9th Cir. 2015) ...................................................................................................15

*Revitch v. New Moosejaw, LLC*,
    2019 WL 5485330 (N.D. Cal. Oct. 23, 2019).............................................................................7

*Rogers v. Ulrich*,
    52 Cal. App. 3d 894 (1975) ..........................................................................................3, 5, 6, 10

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) .....................................................................................................14

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016)...............................................................................................................11

*Walden v. Fiore*,
    571 U.S. 277 (2014)...................................................................................................................15

*In re Zynga Priv. Litig.*,
    750 F.3d 1098 (9th Cir. 2014) .....................................................................................................9

**Statutes**

Cal. Penal Code § 631(a) ..................................................................................................... *passim*

Cal. Penal Code § 635(a) ..................................................................................................... *passim*

Cal. Penal Code § 637.2(a) ........................................................................................................11

Ga. Code Ann. § 16-11-66(a) .....................................................................................................15

**Other Authorities**

Cal. Const....................................................................................................................2, 3, 4, 12

*Device*, Oxford English Dictionary, https://www.oed.com/view/Entry/51464 (last visited
    May 25, 2021).............................................................................................................................11

## NOTICE OF MOTION AND MOTION TO DISMISS

**PLEASE TAKE NOTICE** that on July 29, 2021, at 9:30 a.m., or as soon thereafter as available, in the courtroom of the Honorable Laurel Beeler, located at 450 Golden Gate Avenue, Courtroom B, 15th Floor, San Francisco, California 94102, defendant FullStory, Inc. ("FullStory"), will and hereby does move to dismiss plaintiffs' second amended complaint (Dkt. 58) pursuant to Federal Rules of Civil Procedure, 12(b)(1), 12(b)(2), and 12(b)(6). This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declaration of Matthew Q. Verdin and accompanying exhibits, the pleadings and papers on file in this action, any other such matters of which the Court may take judicial notice, and any other matter that the Court may properly consider.

## STATEMENT OF RELIEF SOUGHT

FullStory seeks an order dismissing the claims against it with prejudice for lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim upon which relief can be granted.

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether this Court should dismiss the claims in this action against FullStory for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

2. Whether this Court should dismiss plaintiffs' claim under section 635(a) of the California Invasion of Privacy Act for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

3. Whether this Court should dismiss plaintiffs' claims for injunctive relief for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

4. Whether this Court should dismiss FullStory from this action for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

FullStory is a vendor that offers software-based services to help its clients improve the design and user experience on their websites. Noom is a company, and a client of FullStory, that helps its users lose weight and lead healthier lifestyles. Noom uses FullStory's software to collect information about, and later analyze, what visitors are doing on its website (noom.com), such as mouse clicks and keystrokes, so that it can better understand its visitors' experience. Plaintiffs seek to criminalize this routine use of a vendor to provide client services, characterizing FullStory's services as wiretapping (*i.e.*, eavesdropping) in violation of their right to privacy under California's Invasion of Privacy Act and the California Constitution. The Court should dismiss plaintiffs' third complaint alleging these meritless claims for the same reasons it dismissed the prior complaint, but this time with prejudice.

*First*, plaintiffs' new complaint continues to suffer from the same defect that plagued the prior complaints: the failure to plausibly allege that FullStory eavesdropped on plaintiffs' communications with Noom. As this Court held in dismissing the prior complaint, "as a service provider, FullStory is an extension of Noom," a party to the communication, and therefore "is not a third-party eavesdropper." *Graham v. Noom, Inc.*, 2021 WL 1312765, at *5 (N.D. Cal. Apr. 8, 2021). Plaintiffs' new complaint does not undercut this holding because plaintiffs do not allege that FullStory stepped out of its role as a service provider to Noom, or that it sold plaintiffs' information to third parties (it did not). Rather, plaintiffs allege in more detail how FullStory's software collects and analyzes website data *for its clients*, reinforcing factual allegations that this Court already accepted as true in its prior order. While plaintiffs' complaint suffers from other defects, this defect permeates, and is fatal to, all of plaintiffs' claims.

*Second*, plaintiffs fail to carry their burden to show that FullStory—a Georgia-based company incorporated in Delaware—is subject to personal jurisdiction in California. Plaintiffs continue to predicate personal jurisdiction over FullStory on the same deficient eavesdropping allegations that run through each of plaintiffs' claims. For that reason, the Court should reach the same conclusion as it did in its prior order: "[b]ecause they did not plausibly plead wiretapping, the plaintiffs have not met their

prima facie burden to establish specific personal jurisdiction," which is the only form of personal jurisdiction that plaintiffs allege. *Id.* at *10.

## II.  BACKGROUND

***This Lawsuit.***  In October 2020, plaintiffs filed this putative class-action lawsuit against FullStory, a Georgia-based company, which provides a software-based service to help its client, Noom, improve the design and user experience on its website. Dkt. 1 ("Compl.") ¶ 17; Dkt. 27 ("Am. Compl.") ¶ 18; Dkt. 58 ("Second Am. Compl.") ¶¶ 36–37.  Noom embedded FullStory's software code on its website (noom.com), which in turn collects certain data about visitors who interact with the website (*e.g.*, keystrokes, mouse clicks). Second Am. Compl. ¶ 38.  FullStory's software allows Noom to later analyze a visitor's interactions with its website, including through a session replay feature that provides a "high-fidelity reproduction of a person's experience" on the website (*i.e.*, "it's not video"). *Id.* ¶¶ 18–19.[1]  While a visitor is still on the site, Noom can see the reproduction "in near," but not in actual, "real time." *Id.* ¶ 32.

Plaintiffs' core allegation is that FullStory eavesdropped on—and that Noom aided and abetted the eavesdropping of—plaintiffs' communications with Noom when they visited Noom's website. *See* Second Am. Compl. ¶¶ 81–116.  They assert that this conduct violated their right to privacy under California's Invasion of Privacy Act ("CIPA") and the California Constitution. *Id.*

***The Court's Dismissal of Plaintiffs' Amended Complaint.***  In April 2021, the Court granted defendants' motions to dismiss plaintiffs' amended complaint, holding that plaintiffs failed to plausibly allege that FullStory was a third-party eavesdropper. *Noom, Inc.*, 2021 WL 1312765, at *4, *10.  The Court reasoned that, "as a service provider, FullStory is an extension of Noom," a party to the communications with plaintiff. *Id.* at *5.  "It provides a tool—like the tape recorder in *Rogers* [v. *Ulrich*, 52 Cal. App. 3d 894 (1975)]—that allows Noom to record and analyze its own data in aid of Noom's business." 2021 WL 1312765, at *5.  The Court distinguished the conduct of defendants that

---

[1] Declaration of Matthew Q. Verdin ("Verdin Decl.") Ex. A at 4 (webpage explaining with respect to the feature that "it's not video, but a high-fidelity reproduction of a person's experience").  This webpage is incorporated by reference into the second amended complaint. *See* Second Am. Compl. ¶ 21 n.5 (citing webpage); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

courts have found to be third-party eavesdroppers, where the defendants "were independent parties who mined information from other websites and sold it." *Id.* Because FullStory used plaintiffs' data only in its capacity as a service provider to its client, Noom, the Court held that FullStory "is not a third-party eavesdropper." *Id.* The Court granted leave to amend (except as to plaintiff Graham's claim for injunctive relief, which was dismissed with prejudice). *Id.* at *10.

***Plaintiffs' Second Amended Complaint.*** Plaintiffs filed a second amended complaint, which adds new allegations reinforcing the Court's conclusion that FullStory used plaintiffs' data only in its capacity as a service provider to its client, Noom. Plaintiffs allege in more detail how FullStory's software collects and analyzes website data for its clients—factual allegations that this Court already accepted as true in its prior order. Second Am. Compl. ¶¶ 41, 48–49. Plaintiffs also allege that "some implementations" of FullStory's software have the capability to use other data a client provides to allow a client to better analyze its own data; however, plaintiffs do not allege that such a capability is included or used in Noom's implementation of FullStory's software. *Id.* ¶¶ 43–46. In other words, "[a]t the base level," plaintiffs allege that "FullStory analyzes data in order to index it *for its clients*." *Id.* ¶ 43 (emphasis added). There are no allegations that FullStory acted as an "independent part[y]" that "mined information" about plaintiffs "and sold it," or that FullStory otherwise stepped out of its role as a service provider to Noom. *Noom*, 2021 WL 1312765, at *5.[2]

## III.   ARGUMENT

The second amended complaint is plaintiffs' third attempt to criminalize the routine software-based services that FullStory provides to its client (Noom). It should be their last. Plaintiffs allege the same deficient claims: (1) eavesdropping (Cal. Penal Code § 631(a)); (2) sale of eavesdropping software (*id.* § 635(a)); and (3) invasion of privacy (under the California Constitution). Second Am. Compl. ¶¶ 81–116. The Court should dismiss plaintiffs' claims with prejudice for two principal reasons. *First*, plaintiffs again fail to plausibly allege a critical element of each claim: eavesdropping by FullStory.

---

[2] The second amended complaint quotes Noom's privacy policy (Second Am. Compl. ¶¶ 67–68, 70), two patents (*id.* ¶¶ 41–46), and FullStory's Partner Terms and Conditions (*id.* ¶ 48), which are incorporated by reference into the complaint. *Daniels-Hall*, 629 F.3d at 998; Dkt. 45-1; Verdin Decl. Exs. B–D.

Without this critical element, plaintiffs fail to state any claim upon which relief can be granted, and lack Article III standing to pursue their claim for the sale of eavesdropping software.  *Second*, plaintiffs fail to meet their prima facie burden to establish personal jurisdiction over FullStory because they continue to predicate jurisdiction on the same deficient eavesdropping allegations.

      **A.**      **The Second Amended Complaint Fails to State a Claim.**

            **1.**      **Plaintiffs Fail to State an Eavesdropping Claim Under Section 631(a).**

Plaintiffs' eavesdropping claim continues to suffer from the same fatal flaws as the last two iterations.  Section 631(a) prohibits only unauthorized, third-party access to the contents of an ongoing communication, otherwise known as eavesdropping.  *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 125–27 (N.D. Cal. 2020).  Plaintiffs fail to state an eavesdropping claim because (a) FullStory was not a third-party eavesdropper on plaintiffs' communications; (b) plaintiffs predicate the claim, at least in part, on non-content information, and (c) Noom's privacy policy disclosed that service providers like FullStory may collect information on how visitors interact with Noom's website.

            **a)**      **FullStory Was Not a Third-Party Eavesdropper on Plaintiffs' Communications with Noom.**

Plaintiffs again fail to plausibly allege that FullStory was a third-party eavesdropper, as required to state a claim under section 631(a).  Section 631(a) prohibits only the "secret" monitoring of a private conversation, and "[i]t is never a secret to one party to a conversation that the other party is listening to the conversation; only a third party can listen secretly to a private conversation."  *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (1975).  Thus, section 631(a) does not extend liability to a person "who is a 'party' to the communication."  *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020) ("*Facebook III*") (citing *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979) ("[S]ection 631 . . . has been held to apply only to eavesdropping by a third party and not to recording by a participant to a conversation.")).

*Rogers* is instructive.  In that case, a city employee had a phone company install a "tape recorder jack" on his phone so that he could, for example, record conversations and "relay parts of [those] conversations . . . to local radio stations for broadcast."  52 Cal. App. 3d at 897.  When a candidate for city council learned that the city employee recorded their conversation without his knowledge, he

brought a claim against the city employee under section 631(a). *Id.* at 896. The *Rogers* court affirmed dismissal of the claim, holding that the city employee could not be liable because section 631(a) does not prohibit "the recording of a conversation made by a participant rather than by a third party." *Id.* at 898; *see also, e.g.*, *Membrila v. Receivables Performance Mgmt., LLC*, 2010 WL 1407274, at *2 (S.D. Cal. Apr. 6, 2010) (holding that a defendant debt collector could not be liable for recording and monitoring phone calls with the plaintiff because the defendant was a party to the communications).

FullStory offers website operators the modern-day equivalent of the phone company's tape recorder in *Rogers* and, thus, cannot be a third-party eavesdropper. FullStory is a vendor that provides a software-based service that allows its client, Noom, to capture a user's interactions with its website, host the data on FullStory's servers, and view and analyze the information. Second Am. Compl. ¶¶ 39, 42. In other words, as this Court observed, FullStory "provides a tool—like the tape recorder in *Rogers*— that allows Noom to record and analyze its own data in aid of Noom's business." *Noom*, 2021 WL 1312765, at *5. Just as the tape recorder in *Rogers* was an extension of the city employee, "as a service provider, FullStory is an extension of Noom." *See id.* And because FullStory is an extension of Noom, which is a party to the communications at issue, FullStory "is not a third-party eavesdropper." *Id.*

Nowhere do plaintiffs allege in their new complaint that FullStory used plaintiffs' data for any purpose other than in its capacity as a service provider to Noom. Plaintiffs do not, for example, allege that FullStory sold their data, used it for advertising purposes, or disclosed it to any third party. Indeed, plaintiffs allege precisely the opposite. They allege that FullStory offers software-as-a-service; that is, Noom is effectively renting space on FullStory's servers where Noom can store data related to website interactions and view that data using FullStory's dashboard. *See* Second Am. Compl. ¶ 12. This is no different in kind than if the defendant in *Rogers* had used FullStory's software-based service to record, store, listen to, and analyze his conversations with the plaintiff there. That FullStory's software-based service is more advanced than a tape recorder—and "not a simple tape recorder," as in *Rogers*, *see* Second Am. Compl. ¶ 49—is immaterial. The basis for this Court's prior order was plaintiffs' failure to allege that FullStory stepped out of its role as Noom's vendor and "used the data [for] itself." *Noom*, 2021 WL 1312765, at *5. Plaintiffs have not cured that deficiency here, nor could they.

      To the contrary, the new allegations reinforce that FullStory, "[a]t the base level," used plaintiffs' data "for its client[]," Noom. *See* Second Am. Compl. ¶ 43. Specifically, plaintiffs allege that FullStory's software "transmits consumers' data to FullStory for storage," and that FullStory "analyzes [the] data . . . *for its clients*," and thus necessarily "has access to the [data]." *Id.* ¶¶ 41, 43, 48–49 (emphasis added). But this Court's prior order already accepted as true that FullStory's software collects data from Noom's website and analyzes such data (and thus necessarily has access to it) on Noom's behalf. *See Noom*, 2021 WL 1312765, at *1 ("[FullStory] provides software to its clients (including Noom) to capture and analyze data so that the clients can see how visitors are using their websites."). These new allegations therefore do not undercut—and indeed support—the Court's conclusion in its prior order that FullStory, as a service provider, is an extension of Noom, not a third-party eavesdropper. *See id.* at 5.

      FullStory's alleged conduct is thus far afield from the conduct of defendants that courts have found to be third-party eavesdroppers. In *Facebook III*, for example, the Ninth Circuit held that Facebook could not avail itself of the party exception where Facebook used plug-ins to track the web browsing activity of logged-out Facebook users on third-party websites, which Facebook compiled and "sold to advertisers to generate revenue." 956 F.3d at 596. And in *Moosejaw*, the district court held that NaviStone, too, could not avail itself of the party exception, where NaviStone allegedly used embedded code to capture the data of visitors to an e-commerce website, which NaviStone used to de-anonymize other data and sell the resulting consumer information to third parties. *See Revitch v. New Moosejaw*, *LLC*, 2019 WL 5485330, at *1 (N.D. Cal. Oct. 23, 2019).[3] As this Court observed, Facebook and NaviStone "were independent parties who mined information from other websites and sold it." *See Noom*, 2021 WL 1312765, at *5. Plaintiffs make no such allegations regarding FullStory in their new complaint.

---

[3] Second Amended Complaint of Revitch at ¶¶ 24, 29, *Revitch v. New Moosejaw, LLC*, No. 18-cv-06827 (N.D. Cal. May 22, 2019), ECF No. 43. (alleging that NaviStone uses data collected from one website to de-anonymize visitors to other websites, and that it provides marketing services to its clients using this de-anonymized data); *see also id.* ¶¶ 1, 9–46.

Finally, plaintiffs cite a FullStory patent describing certain enhanced capabilities of its software "[i]n some implementations." Second Am. Compl. ¶ 46; *see also id.* ¶¶ 43–45. But this, too, fails to show that FullStory used plaintiffs' data for any purpose other than in service of Noom. As an initial matter, plaintiffs fail to allege that such capabilities are or were included in Noom's implementation of FullStory's software, or that such capabilities were used with respect to plaintiffs' data. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (facts must show "more than the mere possibility of misconduct" to be plausible). In addition, the technology described in the cited patent simply improves the analytics that FullStory's software provides to a client: the technology provides the capability to combine data collected from a website with other data that the *client* provides, such as a user's historical purchase information, so that the client can better analyze its own data.[4] *Id.* ¶¶ 43–46. For example, a client may want to analyze "how different types of users prefer to interact with a given website," and may use this capability to review only "session information related to users that had a historical purchase value of less than $X." Verdin Decl. Ex. B col. 25 ll. 12-19. These allegations, to the extent relevant to Noom's implementation of FullStory's software, thus further support the conclusion that FullStory acted only in its capacity as Noom's service provider.

Accordingly, because Noom was a party to plaintiffs' communications, and FullStory, as service provider, is an extension of Noom, FullStory is not a third-party eavesdropper and cannot be held liable under section 631(a).

### b) The Eavesdropping Claim Fails to the Extent It Is Predicated on Non-Content Information.

As before, the Court should dismiss plaintiffs' section 631(a) claim to the extent it is predicated on non-content information. Section 631(a) prohibits only the unauthorized collection of the "contents" of any communications. Cal. Penal Code § 631(a) (emphasis added). As the Court previously noted, "[t]he 'content' of a communication is 'the intended message conveyed by the communication.'" *Noom*,

---

[4] The patented technology does not, as plaintiffs allege, provide the capability to "obtain data from other third-party applications." Second Am. Compl. ¶ 46. Rather, as explained in the language that immediately follows this allegation, which plaintiffs quote from FullStory's patent, FullStory provides the capability to obtain data only "from the publisher's [i.e., website operator's] data store." *Id.* (plaintiffs' emphasis omitted).

2021 WL 1312765, at *6 (quoting *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014)).  The Court previously dismissed plaintiffs' section 631(a) claim "to the extent that it is predicated on non-content information."  2021 WL 1312765, at *6.  And it directed that, "[i]n any amended complaint," plaintiffs were to "delineate content from non-content records."  *Id*.  Plaintiffs have repeated their error by again purporting to base their section 631(a) claim, at least in part, on non-content information.

*First*, plaintiffs flout this Court's order by including a catch-all allegation that "any . . . information Plaintiffs intentionally provided to Noom while on the website" constitutes "content."  Second Am. Compl. ¶ 89.  This is plainly overbroad.  For example, plaintiffs allege that FullStory's software collects IP addresses, which plaintiffs have already conceded is "not . . . actionable under CIPA."  Dkt. 40 at 13; *see, e.g.*, *In re Zynga*, 750 F.3d at 1107 (explaining that contents do not include record information, such as addresses, generated in the course of the communication).

*Second*, plaintiffs incorrectly assert that the "webpages and URLs" they visited are content.  *See* Second Am. Compl. ¶ 89.  The Ninth Circuit has held that such data "does not constitute the contents of a communication" unless it contains "a search term or similar communication made by the user," as may be present in a URL when using a search engine.  *In re Zynga*, 750 F.3d at 1108–09.  Plaintiffs have not alleged that the webpages or URLs at issue here contain such information, for example, by alleging "that the URLs . . . could emanate from search terms inputted into a third-party search engine."  *Facebook III*, 956 F.3d at 605.  Rather, plaintiffs allege, at most, that the webpages and URLs they visited "revealed only that [they] had clicked on a link" on Noom's website.  *Id*.  That is not content.

*Third,* plaintiffs allege that their keystrokes and mouse clicks categorically constitute contents, but plaintiffs are wrong.  Second Am. Compl. ¶ 89.  Keystrokes and mouse clicks can be used for a number of purposes, such as navigating up or down on a webpage, without communicating any message, intended or otherwise.  *See In re Zynga*, 750 F.3d at 1106.  Plaintiffs must plausibly allege the specific message they intended to communicate through their keystrokes and mouse clicks; they have failed to do so here.

        c)      **Noom's Privacy Policy Forecloses Plaintiffs' Claims.**

Plaintiffs' section 631(a) claim also fails because Noom's privacy policy disclosed that its service providers, like FullStory, collect data from website visitors.  As the Court noted before, section

631(a) imposes liability only "if a person *secretly* listens to another's conversation." *Noom*, 2021 WL 1312765, at *4 (emphasis added) (citing *Ribas v. Clark*, 38 Cal. 3d 355, 359 (1985)). This is because "'[e]avesdropping' is the problem the Legislature meant to deal with" in enacting section 631. *Rogers*, 52 Cal. App. 3d at 899. And to "'eavesdrop' is 'to listen secretly to what is said in private.'" *Id.* (quoting Webster's 7th New Collegiate Dictionary (1972)).

FullStory's data collection was not done in secret nor was it surreptitious. The Court previously concluded that FullStory was an extension of Noom because it was acting in its role as a *service provider* to Noom. *See Noom*, 2021 WL 1312765, at *5 ("[A]s a service provider, FullStory is an extension of Noom."). The privacy policy for Noom's website expressly disclosed to users like plaintiffs that data regarding their interactions with the website may be collected by Noom *and by Noom's service providers*. Dkt. 45-1 at 2–4. For example, the policy provides that Noom's "service providers may use a variety of technologies that automatically (or passively) store or collect certain information whenever [a u]ser visits or interacts with the Website." *Id.* at 3. The gravamen of plaintiffs' complaint, meanwhile, is that when plaintiffs "accessed Noom's website, their electronic communications with Noom"—*i.e.*, their interactions with Noom's website—were "captured, stored, and analyzed by FullStory." Second Am. Compl. ¶ 73. This is precisely what was disclosed in Noom's privacy policy.

In sum, the disclosures made in Noom's privacy policy render implausible plaintiffs' conclusory allegation that FullStory's data collection was surreptitious. *See* Second Am. Compl. ¶¶ 39, 73. For this additional reason, the Court should dismiss plaintiffs' eavesdropping claim.

> **2.    Plaintiffs Lack Standing to Pursue—and Fail to State—a Claim for the Sale of Eavesdropping Software Under Section 635(a).**

Plaintiffs lack standing to bring, and fail to state, a claim against FullStory for the sale of a "device" that is "primarily or exclusively designed or intended for eavesdropping upon the communication of another." *See* Cal. Penal Code § 635(a).

*First*, plaintiffs continue to lack both statutory and Article III standing to bring a claim under section 635(a) for the same reasons this Court articulated in dismissing the prior complaint. Only those who have "been injured by a violation of this chapter [*i.e.*, CIPA], may bring an action against the

person who committed the violation." Cal. Penal Code § 637.2(a).  In the same vein, a plaintiff must have "suffered an injury in fact" to have Article III standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  Plaintiffs continue to base their statutory and Article III standing on FullStory's alleged eavesdropping.  *See* Second Am. Compl. ¶¶ 1, 36–40, 53, 80.  As explained above (*supra* at III.A.1.a), plaintiffs fail to plausibly allege that FullStory was an eavesdropper and, thus, have not stated a claim under section 631(a).  Without such a predicate violation of CIPA, plaintiffs "have no private right of action" under section 635(a) and "lack Article III standing too," as this Court found in dismissing the prior complaint.  *Noom*, 2021 WL 1312765, at *7–8.

Plaintiffs' new allegation that a "violation of section 635 [is] sufficient to confer Article III standing" is both irrelevant and wrong.  *See* Second Am. Compl. ¶ 105.  It is irrelevant because, even assuming that a "bare procedural violation" of section 635(a) were sufficient to establish an injury in fact, contrary to established law (*Spokeo*, 136 S. Ct. at 1549), plaintiffs' claim still rests on their deficient eavesdropping allegations: without plausibly alleging that the use of FullStory's software amounts to eavesdropping, as here, the software cannot be an eavesdropping "device" under section 635(a).  Plaintiffs' new allegation is also wrong.  Plaintiffs do not allege any injury from the mere sale of an alleged eavesdropping device, only the later *use* of it.  *See* Second Am. Compl. ¶¶ 97–107.  And it would be "constitutionally problematic" to permit a plaintiff to bring a section 635(a) claim in such circumstances because it would mean that "plaintiffs who suffered no injury in fact would still be able to sue."  *See Cohen v. Casper Sleep Inc.*, 2018 WL 3392877, at *5 (S.D.N.Y. July 12, 2018) (interpreting analogous federal statute).

*Second*, plaintiffs fail to state a claim because they do not plausibly allege that FullStory's software is a "device" within the meaning of section 635(a).  Plaintiffs allege in conclusory fashion that "FullStory's code is a 'device.'"  Second Am. Compl. ¶ 102.  But they have not "include[d] facts in their pleading to show why [that] is so."  *In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 937 (N.D. Cal. 2015) (rejecting a similarly conclusory allegation that software used to collect data from a website is a "device" and thus a "contrivance" for purposes of section 631(a)).  Nor could they.  The Oxford English Dictionary defines "devices" as "an invention, contrivance; esp. a mechanical contrivance (usually of a simple character) for some particular purpose."  *Device*, Oxford English

Dictionary, https://www.oed.com/view/Entry/51464 (last visited May 25, 2021). FullStory's software code is not a "mechanical contrivance," and thus is not a "device." While "device" may have other meanings, the rule of lenity that applies to section 635(a), as a penal statute, requires that any ambiguities be construed in FullStory's favor. *See LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1134 (9th Cir. 2009) (applying rule of lenity to civil application of a penal statute).

*Third*, plaintiffs also fail to state a claim because they do not plausibly allege that FullStory's software is "primarily or exclusively designed or intended for eavesdropping," as required under section 635(a). To the contrary, plaintiffs previously alleged that FullStory's software is designed to provide "marketing analytics" and to "help businesses improve their website design and customer experience," not to eavesdrop. Am. Compl. ¶¶ 17–18. Perhaps recognizing that these admissions defeat plaintiffs' claim under section 635(a), plaintiffs removed them from their second amended complaint. But plaintiffs cannot avoid dismissal "by simply deleting [them] from [their] amended complaint." *J. Edwards Jewelry Distrib., LLC. v. Wells Fargo & Co.*, 2019 WL 2329248, at *4 (N.D. Cal. May 31, 2019) (considering prior allegations in dismissing amended complaint with prejudice). Plaintiffs' admissions support the conclusion that FullStory's software is best understood as "part of [the] routine internet functionality" that makes digital commerce possible. *See In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 846 (N.D. Cal. 2017) ("*Facebook II*") ("[W]ebsites routinely embed content from third-party servers in the form of videos, images, and other media, as well as through their use of analytics tools, advertising networks, code libraries and other utilities.").

### 3. Plaintiffs Fail to State an Invasion of Privacy Claim Under the California Constitution.

Plaintiffs fail to state an invasion-of-privacy claim under the California Constitution because they continue to predicate their claim on the same deficient eavesdropping allegations. To state their claim, plaintiffs must plausibly allege three elements: (1) possession of a legally protected privacy interest, (2) a reasonable expectation of privacy, and (3) an intrusion "so serious . . . as to constitute an egregious breach of social norms such that the breach is highly offensive." *Facebook III*, 956 F.3d at 601 (citation omitted). Plaintiffs' first element—a legally protected interest—still rests on their allegations of eavesdropping (*i.e.*, wiretapping) by FullStory, which are deficient for the reasons

explained above (*see supra* at III.A.1).  Second Am. Compl. ¶¶ 111–112 (alleging an invasion of privacy "by implementing FullStory's wiretaps on Noom's website").  As the Court observed, "[b]ecause there was no plausible wiretapping by FullStory, the plaintiffs did not plausibly plead that they possess a legally protected privacy interest."  *Noom*, 2021 WL 1312765, at *8.

While plaintiffs' claim may be dismissed on the first element alone, plaintiffs also fail to plausibly allege the remaining two elements of their claim.  *First*, plaintiffs cannot plausibly allege a reasonable expectation of privacy in data that they intentionally and voluntarily provided to Noom and, by extension, FullStory, even if FullStory were considered a third party (which it is not, *supra* at III.A.1.a).  Reasonable internet users recognize that when they input information on a website, the businesses running those websites "routinely embed content from third-party servers . . . through their use of analytics tools, advertising networks, code libraries and other utilities."  *Facebook II*, 263 F. Supp. 3d at 846 (finding no reasonable expectation of privacy).  *Second*, plaintiffs fail to plausibly allege an egregious breach of social norms because plaintiffs allege, at most, that FullStory captured mouse clicks and keystrokes.  Second Am. Compl. ¶¶ 4–5.  Plaintiffs speculate that this also amounted to the collection of personal information entered into the text fields on Noom's website, but that is irrelevant.  Courts routinely find that "[e]ven disclosure [to third parties]," which did not occur here, "of personal information, including social security numbers," is not an egregious breach of social norms.  *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (collecting cases).

### 4. Plaintiff Moise Lacks Standing To Bring a Claim for Injunctive Relief.

Plaintiff Moise lacks standing to seek injunctive relief because she has not plausibly alleged a likelihood of future harm.  To establish Article III standing, a future injury "must be *certainly impending* to constitute injury in fact . . . allegations of *possible* future injury" are not enough.  *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 409 (2013) (emphases in original).  Here, Moise confirms that she faces no risk of future injury, alleging that she "would be willing" to visit Noom's website in the future only "if she knew" that the alleged injury-causing conduct had ceased (*i.e.*, that Noom stopped using FullStory's software-based services).  Second Am. Compl. ¶¶ 96, 107.  Moise's allegation falls short of establishing that she will suffer a "certainly impending" injury in the future, as required.  The Court should therefore hold that Moise lacks Article III standing to pursue injunctive relief.  *See Clapper*, 568 U.S. at 409.

### B. FullStory Is Not Subject to Personal Jurisdiction In California.

Plaintiffs once again fail to meet their prima facie burden to establish specific jurisdiction over FullStory because plaintiffs continue to predicate specific jurisdiction on their deficient eavesdropping allegations (*supra* at III.A.1).[5] *See* Second Am. Compl. ¶ 16 (alleging, for example, that FullStory "knows it is wiretapping users in California"). For that reason, the Court should again find that, "[b]ecause they did not plausibly plead wiretapping, the plaintiffs have not met their prima facie burden to establish specific personal jurisdiction." *Noom*, 2021 WL 1312765, at *10.

Even if plaintiffs had plausibly alleged wiretapping by FullStory, such allegations would not provide a basis for specific jurisdiction over FullStory, which the Court had assumed without deciding in its prior order. *Id.* To justify specific jurisdiction over a defendant in suits sounding in tort, as here, a plaintiff must show that (1) the defendant "purposefully directed" its activities toward the forum state, and (2) the claims "arise[] out of or relate[] to" the defendant's forum-related activities. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). Only if the plaintiff makes that showing does the burden then shift to the defendant to show that (3) the exercise of jurisdiction would not be reasonable. *Id.*

*First*, plaintiffs fail to show that FullStory, a Georgia-based company incorporated in Delaware, purposefully directed its activities toward California. To show purposeful direction, plaintiffs must, at a minimum, allege facts showing that FullStory's alleged wiretapping was "expressly aimed" at California, and that FullStory caused harm that it "knows is likely to be suffered in" California. *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017) (citations omitted). While plaintiffs allege conclusory statements in this regard, those statements are insufficient because they are premised on *Noom*'s conduct. Second Am. Compl. ¶¶ 9, 16 (alleging that "Noom's customer base" comprises California residents, and that "Noom actively advertises its services in California"). As this Court recognized, "[a] vendor's selling a product to Noom—even if Noom has substantial business [in California] and the vendor knew it—does not establish specific personal jurisdiction over the vendor."

---

[5] Plaintiffs have acknowledged that there is no general jurisdiction over FullStory. Dkt. 40 at 1 n.1 ("Plaintiffs do not contend general jurisdiction applies here.").

*Noom*, 2021 WL 1312765, at *10.  To be sure, plaintiffs allege that FullStory "wiretaps geolocation information."  Second Am. Compl. ¶ 16.  But this allegation does not help plaintiffs: if FullStory were only aware that its wiretap reached California *after* geolocation data had been collected, then that fails to show that FullStory expressly aimed its conduct at California, or knew that harm was likely to be suffered there.

*Second*, plaintiffs fail to show that their claims arise out of or relate to FullStory's forum-related activities.  None of FullStory's challenged conduct has anything to do with California in particular.  Although plaintiffs experienced their alleged harm in California, it is not tethered to the forum in a "meaningful way" because plaintiffs would have experienced the same alleged harm wherever else they might have accessed Noom's website.  *See Walden v. Fiore*, 571 U.S. 277, 290 (2014).  The effects of FullStory's alleged conduct on plaintiffs is therefore "not connected to the forum State in a way that makes those effects a proper basis for jurisdiction."  *Id.* (no jurisdiction over a Georgia defendant where plaintiffs would have experienced the same injury "wherever . . . they might have traveled and found themselves"); *Picot v. Weston*, 780 F.3d 1206, 1215 (9th Cir. 2015) (no jurisdiction over a defendant in California where plaintiff's alleged injury "would follow him wherever he might choose to live or travel").

*Third*, while plaintiffs have not met their burden under the first two prongs, the exercise of specific jurisdiction over FullStory would also be unreasonable.  All seven of the Ninth Circuit's reasonableness factors weigh heavily against exercising specific jurisdiction: (1) FullStory did not purposefully inject itself into California's affairs, as set forth above (*supra* at III.A.1); (2) defending claims in California will, and already has, placed an undue burden on FullStory, a Georgia-based company with no direct ties here; (3) the claims conflict with the sovereignty of the state where FullStory is headquartered (Georgia) because there are no analogous claims under Georgia law, *see* Ga. Code Ann. § 16-11-66(a) (requiring only one party's consent to wiretapping); (4) California does not have a strong interest in regulating FullStory's conduct in Georgia; (5) no particular judicial efficiencies are gained in California; (6) this forum is not important to plaintiffs' interest in convenient and effective relief, as plaintiffs' counsel has demonstrated the ability to bring similar wiretapping suits throughout

the country; and (7) Georgia (or Delaware) present an adequate alternative forum. *See CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1079 (9th Cir. 2011).

## IV.   CONCLUSION

For the foregoing reasons, this Court should dismiss plaintiffs' second amended complaint as to FullStory with prejudice.

DATED: May 27, 2021                    COVINGTON & BURLING LLP

By: */s/ Emily Johnson Henn*

EMILY JOHNSON HENN (SBN 269482)
ehenn@cov.com
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: + 1 (650) 632-4700
Facsimile: + 1 (650) 632-4800

SIMON J. FRANKEL (SBN 171552)
sfrankel@cov.com
MATTHEW Q. VERDIN (SBN 306713)
mverdin@cov.com
JENNA L. ZHANG (SBN 336105)
jzhang@cov.com
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091


*Attorneys for Defendant FullStory, Inc.*