# EXHIBIT A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLORENTINO JAVIER,<br><br>Plaintiff,<br><br>v.<br><br>ASSURANCE IQ, LLC, et al.,<br><br>Defendants. | Case No. 20-cv-02860-JSW<br><br>**ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. No. 39 |

This matter comes before the Court upon consideration of the motion to dismiss filed by Assurance IQ, LLC ("Assurance") and ActiveProspect Inc. ("ActiveProspect") (collectively "Defendants"). The Court has considered the parties' papers, relevant legal authority, and the record in this case, and the Court HEREBY GRANTS Defendants' motion, without further leave to amend.[1]

**BACKGROUND**

Plaintiff Florentino Javier ("Javier") brings this putative consumer privacy class action against Defendants for violation of the California Invasion of Privacy Act ("CIPA"), California Penal Code section 631, and the California Constitution based on alleged surreptitious recording of user actions and collection of information on one of Assurance's websites. On March 9, 2021, the Court granted Defendants' motion to dismiss the first amended complaint, with leave to amend, concluding Javier consented to the conduct about which he complained. *Javier v.*

---

[1] Defendants "incorporate[d] their prior briefing … with respect to all the allegations that [Javier] carrie[d] over from the FAC to the SAC." (Mot. at i:19-20.) Javier argues that by doing so Defendants violated the Court's page limitations on motions. The Court agrees. However, it has considered the prior briefing submitted all parties on the two issues raised in the instant motion to dismiss.

1  *Assurance IQ*, No. 20-cv-02860-JSW, 2021 WL 940319, at *3-4 (N.D. Cal. Mar 9, 2021).[2]

2  On April 14, 2021, Javier filed the Second Amended Complaint ("SAC") asserting the same claims. (Dkt. No. 38.) The Court set forth the underlying facts in its Order dismissing the FAC. In brief, Javier alleges that Defendants wiretap visitors to Assurance's websites. The alleged wiretaps are embedded in computer code and "are used by Defendants to secretly observe and record visitors' keystrokes, mouse clicks, and other electronic communications, including the entry of Personally Identifiable Information ('PII') and Protected Health Information ('PHI'), in real time." (SAC ¶ 1.)

Javier alleges he visited the Nationalfamily.com website while investigating life insurance policies and entered information about himself. The last screen shot included in the SAC states "Last step! Your quote is ready." (*See* SAC ¶¶ 4, 35-44.) Javier clicked on a button entitled "View My Quote." That page of the website states that "[b]y clicking 'View My Quote' I indicate my intent to agree to th[e] website's Privacy Policy." It also includes a hyperlink to the Privacy Policy. (*Id.* ¶¶ 44-45.)

Javier includes new allegations regarding ActiveProspect's participation in the alleged wiretapping. (*See* SAC ¶¶ 23-27, 54, 56-62.) Javier also alleges that "[w]hen ActiveProspect and its website-owner clients want to disclose ActiveProspect's technology, they do so explicitly." By way of example, he cites ActiveProspect's model end-user license agreement ("model EULA"), which states:

> We use ActiveProspect's TrustedForm Script to independently document user's consent to be contacted. The TrustedForm Script is embedded on our website and collects the following information when you interact with the page(s) where the script is present: page URL, mouse movements and clicks, contact information inputted by the user, a snapshot of the page, including IP address of the user's computer, time on the page, date and time that the TrustedForm Script was loaded, as well as the date and time of the various user interactions with the page, and HTTP headers from the user's

---

[2] The Court also concluded, in the alternative, that Javier failed to state a claim because he "never allege[d] that ActiveProspect itself ever recorded or received his data, only that it provided a product by which Assurance did so." *Id.*, 2021 WL 940319, at *4 n.5. Defendants renew this argument. In light of the ruling on the issue of consent, the Court does not reach this alternative argument.

browser."

(SAC ¶ 54.) Assurance's Privacy Policy does not include that language. (*Id.*, citing Dkt. No. 28-4, Exhibit B to Declaration of Gulliver Swenson (Assurance Privacy Policy).)

The Court will address additional facts as necessary in its analysis.

## ANALYSIS

**A.  Legal Standard.**

Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Dismissal under Rule 12(b)(6) is granted when the pleadings fail to state a claim upon which relief can be granted. Pursuant to *Bell Atlantic v. Twombly*, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). If the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile. *See Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990). Where, as here, a plaintiff has previously amended a complaint, a district court has broad discretion to deny further leave to amend. *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (internal quotations and citation omitted).

**B.  The Court Grants Defendants' Motion to Dismiss.**

Defendants renew their argument that dismissal is warranted because Javier consented to having his information collected on Assurance's website. As the Court previously stated, consent generally defeats privacy claims because when a party consents to having information collected, they have no reasonable expectation of privacy. *Javier*, 2021 WL 940319, at *2 (citing *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1072 (N.D. Cal. 2016)). However, consent "is not an all-or-nothing proposition." *In re Google,* No. 13-MD-02430-LHK, 2013 WL 5423918, at *12 (N.D. Cal. Sept. 26, 2013.) "There are degrees and nuances to societal recognition of our expectations of privacy: the fact that the privacy one expects in a given setting is not complete or absolute does not render the expectation unreasonable as a matter of law." *Sanders v. Am Bd. Co., Inc.*, 20 Cal. 4th 907, 916 (1999). Thus, consent is generally limited to the specific conduct authorized. *See,*

1  *e.g., Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 847 (N.D. Cal. 2014).

2  Based on the allegations in the SAC and for the reasons set forth in its previous Order, the
3  Court concludes Javier had sufficient notice of Assurance's Privacy Policy. *See Javier*, 2021 WL
4  940319, at *3. The Privacy Policy states:

> We collect the content and other personal information that may be used to identify you as an individual you provide when you use our Services, *including when you request an insurance quote*, apply for insurance, and sign up for an account. This can be personally identifiable information, health information, and information about property you own or lease. We also collect information about how you use our Services, such as the types of content you view or engage with or the frequency and duration of your activities. ….
>
> *The personal information we may collect includes, but is not limited to*: name, address, date of birth, phone number, email address, height, weight, social security number, vehicle details, *personal and family health information* ….
>
> *We may use third party vendors to assist us with the Service. Some examples of the assistance that may be provided by third party service providers are: monitoring and analyzing Site activity*, operations and marketing, hosting the Site, and maintaining our database. ….
>
> *By submitting your personal information either to us or to any of your [sic] partners*, you consent to the use of your personal information as set forth above, and to the transfer of that data to our partners or those individuals or entities we engage to provide Services in connection with your transaction.

(*See* Privacy Policy at 1 (emphasis added).)

Javier renews his argument that he did not consent to the collection of his personal information and could not have done so because the alleged wiretapping began the minute he engaged with the website, well before he clicked View My Quote.[3] Javier has not included any new facts relating to the issue of consent. Although Javier never alleges that he was seeking a quote, it is reasonable to infer his purpose from the allegations, including the screen shots. It also is reasonable to infer that the information he provided would be collected to provide that quote.

The Court previously considered several of the authorities cited by Javier to support this argument, and it finds no basis to revisit its decision based on those authorities. *See Javier*, 2021

---

[3] To be sure, Assurance's Privacy Policy does not state that it "wiretaps" individuals who visit its website.

4

WL 940319, at *3 n.2. Javier also relies on *Keck v. Bank of America*, in which the court denied a motion to dismiss a CIPA claim based on consent. No. 08-cv-01219-CRB, 2008 WL 1743445, at *1 (N.D. Cal. Apr. 15, 2008). In that case, the defendant asked the plaintiff midway through a telephone conversation whether it could record the conversation, although it had begun recording the conversation immediately. *Id.* That court did not conclude that retroactive consent was invalid; it concluded that the defendant failed to prove as a matter of law that the plaintiff's consent could be applied to the earlier portion of the conversation. The *Keck* case also is factually distinguishable because, unlike this case, the defendant did not rely on a written agreement to argue consent. For those reasons, the Court does not find Javier's reliance on *Keck* persuasive.

Javier also relies on a number of cases that address consent in the context of the Fourth Amendment. The Ninth Circuit has "found analogies to Fourth Amendment cases applicable when deciding issues of privacy related to technology." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 604 n.7 (9th Cir. 2020) (holding plaintiffs sufficiently alleged a reasonable expectation of privacy in information collected by defendant). However, in privacy cases "[c]onsent is frequently evaluated using principles of contract to determine 'whether the user agreed' to the specific use or collection." *Javier*, 2021 WL 940319, at *2 (quoting *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 789 (N.D. Cal. 2019)). Accordingly, the Court analyzes the issue of consent using that framework, and it finds no basis to revisit its conclusion that the terms of the Privacy Policy demonstrate the validity of "Javier's retroactive consent to data collection[.]" *Id.*, 2021 WL 940319, at *3.

Javier also argues that the Privacy Policy cannot be construed as a matter of law to disclose the exact conduct at issue. "[I]f a reasonable ... user could have plausibly interpreted the contract language as not disclosing that [the defendant] would engage in particular conduct, then [the defendant] cannot obtain dismissal of a claim about that conduct (at least not based on the issue of consent)." *In re Facebook*, 402 F. Supp. 3d at 789–90. Javier continues to argue that the term "may" did not adequately disclose that Defendants were collecting his information and argues that the disclosure could be construed to refer only to consent for future marketing purposes. However, given the factual allegations and the reasonable inference that Javier provided the

5

information at issue to obtain an insurance quote, the Court does not find those arguments persuasive. Javier also highlights the language of Assurance's privacy policy with the language in ActiveProspect's model EULA. Although the latter is more specific, the Court concludes that does not negate its previous conclusion that Assurance's privacy policy "to which Javier agreed disclosed the specific conduct at issue here." *Javier*, 2021 WL 940319, at *4.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss. Javier amended his claims once as a matter of right, and the Court previously granted him leave to amend. The Court concludes that any further amendments would be futile. Accordingly, the Court will enter a separate judgment, and the Clerk shall close this file.

**IT IS SO ORDERED**.

Dated: August 6, 2021

_____
JEFFREY S. WHITE
United States District Judge